**200 So. 474**

**COSTON v. COSTON.**

No. 35798.

Feb. 3, 1941.

Philip S. Pugh, Jr., and Sydney J. Parlongue, both of New Orleans, for plaintiff and appellee.

Graham & Graham, of New Orleans, for defendant and appellant.

ROGERS, Justice.

Plaintiff sues for divorce on the ground of adultery and from a judgment in his favor, defendant has appealed.

Plaintiff and defendant were married in the City of Gretna on March 12, 1937. The parties separated on April 18, 1939, and this suit was filed the following day.

Plaintiff alleges that his wife committed adultery on two specific occasions, at a furnished rooming house designated by the Municipal Number 2218 Erato Street, in the City of New Orleans.

 On the trial of the case, defendant seriously objected to any testimonial proof of her alleged acts of adultery for the reason that the petition failed to name the alleged accomplices. The objection was overruled and properly so.

Defendant argues that her objection is supported by the decisions of this court in Compton v. Compton, 9 La.Ann. 499; Jenkins v. Maier, 118 La. 130, 42 So. 722; and Higgins v. Dobard, 165 La. 923, 116 So. 385.

In the Compton case, where no particulars of time, place or person were given, this court held that the allegations were too vague to allow the introduction of evidence of any specific act of adultery. In the Jenkins and Higgins cases, this court held that it is not permissible for the plaintiff in an action of divorce on the ground of adultery to introduce as substantive evidence any proof of an act of adultery not alleged. The court in each of the cases laid down the rule that in an action of divorce on the ground of adultery, the time, place and name of the accomplice must be alleged, otherwise they can not be proved.

But in the case of Shipp v. Shipp, 183 La. 1025, 165 So. 189, 190, this court, after referring, among others, to the Jenkins and Higgins cases, announced the following modification of the rule, namely: "The law does not require the plaintiff to do the impossible thing, and if the plaintiff alleges that the name of the co-respondent, an inmate of a house of prostitution, is unknown, that is sufficient and she is entitled to prove the alleged unfaithfulness of her husband."

 If the plaintiff, in a suit for divorce, knows the name of the person with whom the alleged adultery was committed, certainly he should make that fact known. But as stated in Shipp v. Shipp, the law does not require the plaintiff to do that which is impossible. If the name of the alleged accomplice is unknown to plaintiff, obviously, the name of the accomplice can not be given and should not be exacted. This is so whether the plaintiff's inability to set forth

the name of the accomplice appears from the allegations of the petition itself or is made known upon defendant's objection to the admission of evidence because of plaintiff's failure to make the allegation.

In the presence of the acknowledged inability of the plaintiff to give the name of the alleged accomplices, it would be a vain and useless act to require him to do so.

Defendant does not complain that the plaintiff has not set forth the time and place of the alleged adultery with sufficient certainty to identify the alleged acts of adultery.

The undisputed facts established by the testimony are these: Plaintiff is employed as a porter by the Pullman Company. In the performance of his duties, he was absent from the City of New Orleans on March 24, 1939, and April 13, 1939, the dates on which it is alleged in the petition defendant committed adultery at the house No. 2218 Erato Street. On the afternoon of March 24, 1939, defendant, accompanied by another woman, attended the show at the Palace Theatre. At the conclusion of the show, which was about two hours, defendant and her companion visited the Elite Saloon on South Rampart Street. About six o'clock in the afternoon, the two women left the saloon accompanied by a man. They entered an automobile and were driven by the man to No. 1818 Philip Street, where the other woman got out of the car, and the defendant and her male companion then drove in the car to the house No. 2218 Erato Street. They arrived there about eight o'clock at night. The man who drove

the car is not known by plaintiff, but is well known to defendant. He is married and lives in Baton Rouge and was on a visit to New Orleans at the time.

On the night of April 13, 1939, defendant visited a barroom located at First and South Robinson Streets, from which she went direct to the house No. 2218 Erato Street, arriving there shortly before eight o'clock. No. 2218 Erato Street is the home of a woman named Ethel Sheppard, who lives there with her mother and stepfather and her brother and his wife. Ethel Sheppard is employed as a barmaid at the Veterans' Beer Parlor, located at 1813 Magnolia Street. She works at the beer parlor some time at night and some time in the day. She circulates apparently what is intended to be a business card containing her name and address, "E. Sheppard, No. 2218 Erato St.," and her telephone number, "Raymond 4539."

The disputed facts raised by the testimony are these: Plaintiff's testimony shows that on the night of March 24, 1939, the man who drove defendant in an automobile from the Elite Saloon to No. 2218 Erato Street entered the house with defendant; that they remained there until after 10:30 o'clock that night, and that the man drove defendant to her home where they arrived about midnight. That on the night of April 13, 1939, defendant was followed by a man from the beer parlor at First and Robinson Streets to the house No. 2218 Erato Street, and that this man joined defendant in front of the house and they entered the house together. This was

about ten or fifteen minutes to eight o'clock. That the parties were still in the house at ten o'clock.

A young man called as a witness for plaintiff testified that on five different occasions he visited No. 2218 Erato Street, which was operated by Ethel Sheppard, whom he identified in the courtroom, and that on each occasion he had a young girl with him, and that he paid Ethel Sheppard fifty cents for the room. The witness described in detail the house No. 2218 Erato Street and the arrangement of its rooms. Upon the occasion of his visits, he was assigned to two different rooms. His testimony was clear-cut, and, as shown by his written reasons for judgment, impressed the trial judge by its truthfulness.

Ethel Sheppard denied the testimony of this witness, but she admitted that she had at least one bedroom which she used for rental purposes. She also denied that she operated a house for immoral purposes and that defendant was guilty of committing adultery in her home, but her denials are not convincing. The explanation given by this witness for possessing and circulating the so-called business card, to which we have referred, was vague and unsatisfactory.

Defendant, testifying in her own behalf, denied that she had committed the offense with which she was charged in the petition. It is hardly to be expected that she would do otherwise. The offense is of such a nature that, however humble her station in life may be, a wife who is accused of committing it will go to almost any length to negative the charge. This has been so from the days of Solomon: "Such is the way of an adulterous woman; she eateth and wipeth her mouth and saith, I have done no wickedness." The consequences following the proof of such a charge are usually so grave as invariably to lead the wife placed in this terrible position to make any statement which may have the effect of exonerating her from the accusation.

The testimony of plaintiff's witnesses carries with it strong internal marks of truth and appears to be a fair narration of the facts. It was so accepted by the trial judge.

 Adultery may be established by indirect or circumstantial evidence, as well as by direct evidence. In the nature of things, the offense can seldom be established by direct or positive evidence, and a prima facie case may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition. For instance, the character of the house where the parties met, the circumstances under which they met, and all the facts indicating illicit relations between them may be proved, and it is then for the court to determine whether those facts and circumstances have made out the case.

In a case very similar to the present one, this court granted the husband a divorce, holding, as shown by the syllabus, that: "In actions for divorce, courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive, and to bring to bear upon it the experiences

and observations of life, and, thus weighing it with prudence and care, give effect to its just preponderance." Mender v. Brauch, 141 La. 940, 75 So. 1000, citing McCartan v. Filkins, 134 La. 795, 64 So. 717.

We think the judgment of the trial court is warranted by the facts established by the testimony. Although wholly circumstantial in character, the testimony has convinced us that defendant was guilty of the offense with which she is charged in plaintiff's petition.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., and LAND, J., take no part.

FOURNET, J., concurs in the decree.