51 So.2d 41

SAVIN v. SAVIN.

No. 39352.

Feb. 12, 1951.

Blanchard & Blanchard, by C. A. Blanchard, Donaldsonville, for plaintiff and appellant.

Knowles M. Tucker, New Iberia, for defendant and appellee.

HAMITER, Justice.

On November 26, 1948, Dennis Savin instituted this suit against his wife alleging that they were married on or about April 1, 1945, and that of the union one child was born. Plaintiff further alleged, among other things, as follows:

"That the said child is now three years of age and is in the custody of her mother and her paramour Roland Thomas, in the town of Berwick, St. Mary Parish, Louisiana.

"That on or about the 14th day of June, 1947, your petitioner filed a suit against his said wife for a divorce on the grounds of two years separation, No. 21,145 of the Docket of this Honorable Court, in which he alleged that he and his said wife had been living separate and apart since July 11, 1945.

"That on July 29th, 1948, the defendant was guilty of adultery committed at the house of one Roland Thomas and with the said Roland Thomas.

"That since said date the defendant has been living in open adultery with the said Roland Thomas, in the town of Berwick, Louisiana, at the home of her father, at the house of Mr. and Mrs. Kelly, and in camps and boats.

"That as a result of the said adultery the defendant is now pregnant about four and one-half months."

The prayer of plaintiff was for a judgment granting to him an absolute divorce and the care, custody and control of the minor child.

In her answer defendant admitted the marriage, the birth of the child of the union, and the institution of a previous suit for divorce, all as alleged by plaintiff. But she denied his other above mentioned allegations; and she prayed for a judgment rejecting plaintiff's demands.

Thereafter, on motion of plaintiff's counsel, the mentioned previous suit was consolidated with the instant action and both causes fixed for trial on their merits.

As scheduled, the trial of the two cases commenced; however, during the course thereof counsel for plaintiff moved that the previous suit for divorce, predicated on the charge of more than two years separation, be dismissed. The court took the motion under advisement and later sustained it.

The evidence adduced at the trial related almost wholly to the charge of adultery on which the instant action is grounded. The district court concluded, following completion of the hearing, that such evidence did not preponderately disclose adultery on the part of the defendant wife; and it rendered judgment dismissing this suit. The judgment also awarded to the wife the care and custody of the minor child until further orders. Plaintiff appealed.

Shortly after the lodging of the transcript here plaintiff filed a motion for the remanding of the case for a new trial or the taking of additional newly discovered evidence. A separate hearing was had on the motion, and we ruled that it was premature and should be considered and determined along with the merits of the case. See 216 La. 71, 43 So.2d 221. It will be discussed hereinafter.

The appeal, on the merits of the case, was argued at length by counsel for plaintiff, both orally and in brief. But defense counsel has favored us with neither oral argument nor briefs.

Supporting the judgment appealed from, and contained in the record before us, are well considered written reasons assigned by the district judge. We deem it appropriate to quote the following portions thereof, for they provide a thorough analysis of the evidence adduced on the trial of the cause; they recite the conclusions drawn by the judge from such evidence; and they disclose his impressions respecting the credibility of the several witnesses who testified.

"In order to better appreciate all of the angles of this case, it is well to consider the personal attributes of the parties litigant.

"Plaintiff is youthful in appearance, dark complexioned and rather short and heavy set. He appears to be of an excitable nature and to be possessed of strong convictions. He belongs to the type that invariably gives visual or audible disapproval to the testimony of witnesses with whom he disagrees. He often did this during the course of the trial.

"The defendant is also young. She seems to possess a personality opposite to that of her husband. She appears to be calm, deliberate and to have a great deal of poise.

"The principal evidence that plaintiff relies on to establish the adultery charge on July 29, 1948, is his own testimony. He testified that on that night he saw his wife and Thomas in bed in a small house in the yard of the Thomas home. The Thomas home is the home of the alleged paramour's father, mother and family. He states that he then went to get the paramour's brother to witness this fact, but that the brother refused to accompany him.

"The brother testified that no one was in the small house at the time and what misled plaintiff was the reflection of a light from a truck's windshield in the window, or door, of the house. This fact, he established by other witnesses, including a police officer of the Town of Berwick, who were called there for the purpose. The reflection from the windshield gave the appearance of a light in the house, which naturally would indicate occupancy.

"The open adultery charge at the home of defendant's father has not been made the subject of any testimony. On the charge of living openly in adultery at the home of Mr. and Mrs. Kelly, the evidence shows that Mrs. Kelly is the sister of the alleged co-respondent, Thomas; that she became sickly, and, having children to care for, asked defendant to come live with them in order to help in the household duties. Defendant received no renumeration and pays no board. Both Mr. and Mrs. Kelly testified in the case. I was impressed with the testimony of both parties, and became convinced that neither would knowingly contenance illicit sexual intercourse in their home. Certainly, plaintiff and defendant could not live there in open adultery, as charged, without Mr. and Mrs. Kelly knowing about it.

"On the charge that Mrs. Savin lived in open adultery in camps and boats, plaintiff showed that once, and perhaps twice, his wife went to spend the night at the trapping camp of the Thomas'. At that time it was shown that Mr. and Mrs. Kelly went along and a number of persons, including the Kellys' children, and Mr. and Mrs. Thomas, the father and mother of the alleged co-respondent, slept in the same room of the camp. There is no evidence of adultery being committed in a boat.

"On the charge that the defendant and Thomas lived in open adultery at the home of Thomas' parents, it was shown that the Kellys with whom the defendant is living,

moved into the Thomas home during the trapping season when the Thomases were at their trapping camp. Defendant moved there with them. The reason assigned by the Kellys for this move, is that their home does not have the conveniences required for winter that the Thomas home has. Roland Thomas, the alleged paramour, would sometimes sleep there also. But he, Mrs. Savin, and Mr. and Mrs. Kelly all testified that he and Mrs. Savin slept in different rooms. To conclude otherwise would compel us to disregard this positive evidence and to draw upon our imagination.

"Plaintiff has obtained the services of two private detectives to gather the evidence necessary to support this suit. They work out of an agency located in the City of New Orleans and their evidence is in the record. They worked on this case something like a night and a day. Their testimony indicates that Thomas and defendant stayed all night in the Thomas home.

"It is admitted that defendant lived in that home with Mr. and Mrs. Kelly and their children and we have already commented upon that evidence. The detectives' evidence, therefore, adds nothing to the case. They also took, and exhibited at the trial, a reel of moving pictures. These pictures show Roland Thomas and Mrs. Savin on the front porch of the Thomas home. They also show the parties entering the home holding hands, or performing some other insignificant amorous act. The pic-

tures do not show anything not readily admitted by the parties.

"Plaintiff's next charge against the defendant is that she is pregnant. This, of course, would show that she is guilty of committing adultery, for she has lived continuously apart from her husband for a period of over three and one-half years.

"For the purpose of establishing this fact, plaintiff attempted to produce the evidence of a physician, Dr. Lopez, and also questioned one or two of his lady witnesses regarding their visual observations of defendant's physical appearance.

"Dr. Lopez was not permitted to testify. Defendant apparently consulted him for medical advice or treatment, and her husband found out about it. But on the trial of the case, when the doctor was presented as a witness by the plaintiff, defendant refused to waive her legal right not to have the doctor disclose the nature of her visit and the result of his examination, if he made one. * * *

"Not much weight can be given the testimony of the lady who testified from visual observation, regarding the physical appearance of the defendant. This is so, because the margin of error is so great that it renders the value of such testimony inconsequential.

"These are the main grounds upon which plaintiff rests his case of adultery. From this evidence we must decide whether or not plaintiff has discharged the legal bur-

den imposed upon him by law, of proving his case by a preponderance of the evidence.

"The only direct evidence about any act of adultery is his own. That is, of course, contradicted by the two parties supposedly involved. We cannot accept that as proof required by law. All of the other evidence is circumstantial, and in considering it we should bear several factors in mind.

"The observations which follow are not made with the view of condoning the conduct of defendant, nor of reprobating her, but only to facilitate us in considering the evidence in the proper light.

"There is no doubt that defendant has kept, and is keeping, almost constant company with Roland Thomas. Their behavior is that of most ardent suitors. It is natural that such behavior would prove most objectionable to defendant's husband and would become the subject of town gossip, for defendant is a married woman and the mother of a child. When we consider, however, that plaintiff and defendant have been separated since the middle of the year 1945, some three years prior to the conduct we are presently scrutinizing, many of the things she did lose force as acts of immorality, even to the critical mind. Her conduct with Thomas would perhaps not be countenanced in certain levels of society, but in the circle within which she moves, apparently a married woman, separated three years from her husband, and about to be divorced, can well become the subject of courtship, without immoral degradation in the opinion of those in her social circle. This being so, defendant could well be courted by Thomas without feeling that she was doing something improper.

"The next point we should consider is that defendant and Thomas are in love, and plan to marry as soon as defendant is free to do so. Their companionship with each other is presumably based upon motives more exhilarating than those charged by plaintiff.

"Then again, when we consider the tremendous efforts put forth by plaintiff to establish the proof in court of what he is convinced of as being true, we are fairly certain that defendant has been carefully watched and every one of her questionable acts have been aired in this court.

"Plaintiff has amply succeeded in proving that the occasions were numerous when defendant and Thomas had the opportunity of committing adultery. But for us to declare that they did, we must draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery. Such deduction is far from being in harmony with present day social standards. There was, perhaps, a time in our social history when a boy and a girl, going out unchaperoned, would become outcasts of their social sets. Knowing the consequences, when a girl did violate this social restriction, accusa-

tions of immorality would lie upon a sounder basis.

"For these reasons, therefore, we cannot place the brand of adulteress upon defendant from the evidence offered.

"The custody of the parties' child is also at issue. The child is a girl, about three years of age. She is presently in the custody of her mother.

"Other evidence than the one considered above has been introduced by plaintiff in an effort to show that defendant is an unfit mother. This evidence is that defendant did, at one time, work in a restaurant, and that on one, or more occasions, Thomas and defendant's father would bring the child to the place where the mother worked, which also contained a saloon. Girls are hired and work in the place, or places, where defendant worked. Ladies frequent these places.

"The allegations, however, that this evidence is intended to support are much broader than the evidence. They brand the mother as a constant visitor and customer of the saloons in Berwick. The mother is branded as an adulteress, who is in constant company of her adulterer paramour, and who takes her child with them when they visit these saloons. This language charges the defendant with having indeed sunk to a low degree of morality, and conduct unbecoming a mother.

"The evidence, however, does not bear out these charges. On the contrary, several witnesses testified that the defendant is a devoted mother; that she gives her daughter all of the attention she needs. The child is said to be happy and healthy.

"Under these circumstances, we are not justified in taking her child away from this mother. It seems far better for the welfare of the child that she remain with her mother, at least, until the further order of this court.

\*     \*     \*     \*     \*     \*

"Another angle of this case that should be given consideration is plaintiff's dismissal of his suit for a divorce on the grounds of two years' continued separation. Plaintiff did not assign any reason for doing so, his motive is therefore unknown. The motive of a party litigant, or a witness is always at issue, and courts should make inquiry relative thereto whenever necessary.

"If obtaining a divorce was his only purpose in these suits, he passed up his opportunity when he dismissed the suit in which he had a perfect case. It is evident, therefore, that obtaining a divorce was not his primary motive.

"In resorting, as he did, to his suit involving adultery, it may be that he desired to place legal impediment in the way of the marriage of the defendant and Roland Thomas. For had he been successful herein, defendant and Thomas would never have been able to contract matrimony in this state. The provisions of Article 161 of the Revised Civil Code prohibit it.

"Or it may be that he felt his chances of obtaining the custody of his child would have been enhanced by obtaining a divorce from his wife on the grounds of adultery.

"Whichever might be the case, he subordinated his right to a divorce in favor of furthering his motive, and in doing so took full advantage of his legal right to attack the behavior and character of his wife."

■ In this court counsel for plaintiff maintains that circumstantial or indirect evidence or the alleged act of adultery, which he concedes is principally contained in the record of this case, can support a judgment of absolute divorce; and, as a basis therefor, he cites McCartan v. Filkins, 134 La. 795, 64 So. 717, and Coston v. Coston, 196 La. 1095, 200 So. 474. See also Guidry v. Allemand, 216 La. 288, 43 So.2d 611. Assuredly, those cases announce the doctrine invoked. But they also stand for the proposition that such character of evidence must lead fairly and necessarily to the conclusion that the adultery, as alleged, has been committed. In other cases, moreover, it has been said that the law requires a proving of the charge with reasonably legal certainty, Clark v. Clark, 207 La. 606, 21 So.2d 758; and that the court will not place the stigma of unchastity upon a wife on bare suspicion of guilt, but will require clear and convincing proof. Mauberret v. Mauberret, 158 La. 899, 105

So. 6, and Van Asselberg v. Van Asselberg, 164 La. 553, 114 So. 155.

■ From our thorough and careful study of the record we cannot conclude that the trial judge erred when holding that the evidence introduced did not preponderately disclose adultery on the part of the defendant. True, the mass of circumstantial evidence under consideration causes us to entertain a suspicion of her guilt; but, as before shown, that alone cannot serve as the basis for a judgment of divorce and a denial of the mother's right to the care and custody of her child.

■ We are of the opinion, however, that plaintiff's motion to remand the case for the taking of additional newly discovered evidence must be sustained. It is to be remembered that in the petition of this suit, filed November 26, 1948, plaintiff alleged that the defendant, as a result of her adultery with Roland Thomas on July 29, 1948 and subsequently, was then pregnant about four and one-half months. In support of this allegation there is attached to plaintiff's motion to remand a photostatic copy of a birth certificate, purportedly executed officially on April 5, 1949 by the Louisiana State Department of Health—Division of Public Health Statistics, which recites that there was born to the defendant on March 28, 1949 (or subsequent to the perfecting of this appeal), a child named Roland Elmore Thomas, Jr. Further, the certificate lists the child's father as Roland Elmore Thom-

as, Sr., defendant's alleged paramour; and it bears a signature, as such father, purporting to be his. Now, if it can be and is shown that the original birth certificate (the one so photostated) is genuine and that the information contained therein is correct, the mentioned charge of plaintiff would be conclusively proved and he would be entitled to the relief sought herein.

The case, therefore, will be remanded to the district court for the restricted purpose of permitting the parties litigant (both appellant and appellee) to introduce any additional evidence relating to the birth of a child to defendant on March 28, 1949, as is set forth in the referred to photostatic copy of the birth certificate, the evidence, of course, to be otherwise admissible and material. After it is introduced the trial judge shall render judgment, in accordance with law, based on both the new evidence and that heretofore received. Further, pending the consideration of the case on the remand, the judge in his discretion shall provide for and regulate the temporary custody of the child born of the marriage of plaintiff and defendant.

For the reasons assigned the judgment appealed from is reversed and set aside and the case is remanded to the district court to be proceeded with according to law and consistent with the views herein expressed. Appellee shall pay the costs of this appeal, and all other costs shall await the final determination of the litigation.