81 So.2d 705

**Beverly Fields HARRIS**

**v.**

**Felix HARRIS.**

No. 41764.

June 30, 1955.

Blanchard & Blanchard, Donaldsonville, for appellant.

Braxton B. Croom, Louis S. Prejean, Baton Rouge, for appellee.

HAMITER, Justice.

Seeking in this action a judgment of divorce the plaintiff, Beverly Fields Harris, alleged as grounds therefor that her husband "Felix Harris, has committed adultery with various women at various times and in particularly, petitioner shows, that the said Felix Harris is now living in open adultery and concubinage in Darrowville [should be Darrow], Parish of Ascension, with a woman by the name of Fannie Mae Valentine." (Brackets ours.)

The defendant filed exceptions to the jurisdiction and of no right and no cause of action. On these being overruled he answered, generally denying the allegations of the petition.

After trial of the merits the district judge granted plaintiff a divorce in accord-ance with her prayer. In his assigned written reasons for the judgment, following a discussion of the evidence adduced, he stated: "This defendant and the Valentine woman are members of the Negro race; neither of them is old, and knowing the customs and habits of a large number of this race of people in this area, I would have to be gullible, indeed, to believe that they live in the same house under such close personal relationship as disclosed by the evidence and not commit adultery."

The defendant husband is appealing.

The sole question on the merits presented for our determination is whether Felix Harris was "living in open adultery and concubinage * * * with a woman by the name of Fannie Mae Valentine."

As shown by the record plaintiff and the defendant, before their separation, lived in a one-story house situated in the small community of Darrow in Ascension Parish, it consisting of three bedrooms on one side and a sitting room and a kitchen on the other side. Immediately in front of and adjoining that structure was a small building used by the defendant as a grocery store, the rear of which connected with the entrance of the dwelling's sitting room.

Shortly after plaintiff left the defendant and their marital domicile in June or July, 1952, Fannie Mae Valentine moved into the described house, bringing four of her six children (a son 16 years old and three small daughters whose ages were from 4

to 11 years); and therein she, her children and the defendant continued to reside until the date of trial, May 26, 1953. All the while Fannie performed the cooking and washing of clothes for defendant and assisted him in operating the grocery store.

According to the testimony of the defendant and Fannie their relationship was solely that of employer and employee. For the assistance given him in tending his store (he also engaged in a little farming and did odd jobs) and in cooking and washing, she was paid a salary at the rate of $16 per week (copies of "Employer's Quarterly Federal Tax Returns", introduced in evidence, appear to corroborate their testimony on this point). Too, she had some income from other work as a seamstress. Although residing in the same house, both testified, they did not live together—Fannie and her four children occupied the three bedrooms on the "upper" side; whereas the defendant used the sitting room, which adjoined the store, as his bedroom.

Plaintiff introduced no evidence directly proving defendant's alleged living "in open adultery and concubinage". There was not even a showing that he was sometimes observed in compromising positions with Fannie or that they held themselves out as living as man and wife. For the success of the action she relies solely on testimony to the effect that defendant and Fannie were occupying the same house; that at times they were seen together riding in a truck; and that he twice admitted that they were living together.

The accused two vigorously disputed the charge that an illicit relationship existed, and the defendant emphatically denied having made the mentioned admissions. As to their riding together in the truck they explained that the several trips had for their respective purposes her visiting her mother, going to the doctor's office, attending church, and also their obtaining groceries for the store.

Urging an affirmance of the district court's judgment, counsel for plaintiff invoke the doctrine applied in numerous cases that " * * * In actions for divorce, courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive, and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance." McCartan v. Filkins, 134 La. 795, 64 So. 717, Mender v. Brauch, 141 La. 940, 75 So. 1000 and Guidry v. Allemand, 216 La. 288, 43 So.2d 611.

In keeping with that doctrine this court has also observed: "Adultery may be established by indirect or circumstantial evidence, as well as by direct evidence. In the nature of things, the offense can seldom be established by direct or positive evidence, and a prima facie case may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed

as alleged in the petition. For instance, the character of the house where the parties met, the circumstances under which they met, and all the facts indicating illicit relations between them may be proved, and it is then for the court to determine whether those facts and circumstances have made out the case." Coston v. Coston, 196 La. 1095, 200 So. 474, 476; Guidry v. Allemand, supra.

But on viewing the instant cause in the light of those principles we cannot conclude that plaintiff has established, even by indirect or circumstantial evidence, the charge made against her husband. Except for the claimed admissions of guilt by defendant (he denied having made them), no facts or circumstances are revealed by the record that lead fairly and necessarily to the conclusion that adultery was committed as alleged in the petition. Respecting the admissions, our jurisprudence is to the effect that such proof is insufficient, of itself, to convict the defendant. Harman v. McLeland, 16 La. 26; Mack v. Handy, 39 La.Ann. 491, 2 So. 181; Seibert v. Klapper, 49 La.Ann. 241, 21 So. 259; Arbour v. Murray, 222 La. 684, 63 So.2d 425. It follows that for us to hold in plaintiff's favor we must (as stated in Savin v. Savin, 218 La. 754, 51 So.2d 41, 45) "* * * draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery. * * *."

Analogous to the present controversy are Massa v. Thompson, 220 La. 278, 56 So.2d 422 and Hayes v. Hayes, 225 La. 374, 73 So.2d 179, in each of which, as here, there existed circumstances from which a suspicion of guilt of adultery on the part of the defendant might well have resulted. In the former [220 La. 278, 56 So.2d 423] the plaintiff established that "* * * she observed her husband enter a hotel in the City of New Orleans accompanied by a woman whom she did not know and approximately an hour and a half later leave the hotel with the same woman. * * *." In the Hayes case the plaintiff husband proved that the defendant wife on two occasions visited the apartment of another man (for over three hours one day and about forty minutes the other) and also accompanied him to a cocktail lounge. Yet we held in each case that the circumstantial evidence adduced did not preponderately show the commission of adultery and was, therefore, insufficient for the granting of a divorce. See also Savin v. Savin, supra.

Our announced conclusion on the merits makes unnecessary a consideration of defendant's exceptions of no right and no cause of action which are reurged here.

For the reasons assigned the judgment appealed from is reversed and set aside and plaintiff's suit is dismissed at her costs.