96 So.2d 12

Mrs. Marcelle Duconge KENDRICK

v.

Robert W. KENDRICK.

No. 42893.

May 6, 1957.

Rehearing Denied June 10, 1957.

Leo L. Dubourg, New Orleans, for plaintiff-appellant.

James H. Drury, New Orleans, for defendant-appellee.

HAMLIN, Justice ad hoc.

Plaintiff appeals from a judgment of the trial court, which dismissed her suit against her husband for divorce on the ground of adultery.

Plaintiff alleged in her petition that since their marriage defendant had been guilty of adultery committed at various times, but particularly on or about November 5, 1955, through November 11, 1955, at 2808 Octavia Street, with a woman residing at that address.

During the course of the trial, plaintiff testified that before their marriage on February 6, 1954, defendant told her that he had been going with another woman (the co-respondent in this suit) for eight years, but that he did not love her enough to marry her. She stated that after their marriage, he confessed to her that he had had intimate relations with this woman *before* he married plaintiff.

Plaintiff said that during the first year of their marriage the phone would often ring around 7:30 P. M. and her husband would not permit her to answer; that after speaking on the phone, he would tell her that he was going to visit his sister, who also lived on Octavia Street; that he would then leave the house and be gone for a few hours. Plaintiff testified that she *felt* that the co-respondent called her husband.

After a year of marriage, plaintiff moved from the marital domicile. She testified that her cause for leaving was her husband's conduct with the co-respondent. Defendant's testimony is to the effect that his wife moved in order that she might later get a divorce on the ground of living separate and apart for two years.

While on the Gulf Coast in Mississippi during the month of October, 1955, plaintiff endeavored to contact her husband by telephone. When she could not locate him, she called her sister, who rode past the co-respondent's home and saw defendant's car parked in front of the Octavia Street address. After her return to New Orleans, Louisiana, plaintiff observed defendant's car parked in front of the co-respondent's home on October 30, 1955, and on November 2, 1955, unbeknown to him.

While plaintiff was a patient in a New Orleans hospital on November 5, 1955, she employed the services of a New Orleans detective agency to observe her husband's

activities. Two agents followed the defendant for seven consecutive nights. Their testimony is to the effect that the defendant visited the co-respondent every night for several hours and then left; that on one occasion he escorted her to the theater; that lights were always burning in the front part of the house, and they observed no indiscreet activities on the part of defendant and the co-respondent. Under pretense of locating another party, one of the detectives rang the doorbell of the Octavia Street address. He stated that he saw the parties sitting at a table partaking of a soft drink.

The defendant, who was widowed before his marriage to plaintiff, emphatically denied having any intimate relations with the co-respondent. He stated that he met the co-respondent through her father and mother, who had been friends of his first wife and himself before their deaths. He admitted visiting her, but he stated that the visits took place after plaintiff had left the marital domicile and that such events were strictly social. He denied having had phone calls from the co-respondent while he and plaintiff were living together, and stated that the night calls were from business associates.

Several witnesses testified that they knew the defendant and felt assured of his very fine and high reputation with ladies.

The co-respondent, a young unmarried woman, thirty years of age, denied any wrongdoing with the defendant. She also denied that she had made phone calls to his residence. She stated that before her parents died, defendant and his first wife had visited in her home on an average of once a week. She admitted that the defendant had visited her on the named dates, but that it was after she saw the defendant on the streets of New Orleans during October, 1955, and he told her about his wife having left the marital domicile. She testified that their conduct was not immoral; that they sat in her living room and listened to the television. She said that since the deaths of her mother in 1949 and her father in 1951, she lived alone in a highly respectable neighborhood in New Orleans.

The co-respondent's employer for some fifteen years prior to trial testified in her behalf. He said that she had been with his company for many years and had developed into a "crackerjack" secretary; that she was an extremely fine girl, and that her father had held a responsible position in the banking business. He stated that he had noticed her on office parties, and that her behavior was decorous, being on the aloof side. He also testified that she had been a guest of his wife and himself for dinner in their home.

The evidence against the defendant is strictly circumstantial. His visits to the co-respondent were not surreptitious, his car always being parked in front of her residence, rather than on a side street some

distance away. He entered and left by her front door.

■ This Court has held that because of the nature of the offense, adultery may be proved by circumstantial evidence as well as by direct evidence; but, such facts must lead to the conclusion that adultery has been committed as alleged in the petition. Coston v. Coston, 196 La. 1095, 200 So. 474; Savin v. Savin, 218 La. 754, 51 So.2d 41; Harris v. Harris, 228 La. 19, 81 So.2d 705; Hayes v. Hayes, 225 La. 374, 73 So.2d 179.

From a reading of the record in this case, we find that plaintiff has not borne her burden of proof, and that the preponderance of the evidence is in favor of the defendant. The trial judge well stated:

"The jurisprudence, as recently crystallized in the cited cases, is to the effect that, while proof of adultery may be established by indirect or circumstantial evidence, as well as by direct evidence, and a prima facie case for divorce on the ground of adultery may be made by facts or circumstances that lead fairly and necessarily to a conclusion that adultery has been committed, courts must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon them experiences and observations of life, and, weighing all with prudence and care, give effect to its just preponderance. Further, that in these modern times, the mere fact that a man and a woman are alone together does not necessarily presume it is for an affaire d'amour. Harris v. Harris, [228 La. 19], 81 So.2d 705; Savin v. Savin, [218 La. 754], 51 So.2d 41, and the cases therein cited."

■ The trial judge saw and heard the witnesses, and he concluded that adultery had not been proved by a preponderance of the evidence. We see no reason for disturbing his finding. Williams v. Williams, 230 La. 1, 87 So.2d 707.

For the reasons assigned, the judgment of the trial court is affirmed.