GLADNEY, Judge.
Marie Thornton Hennigan instituted this action against her husband, Sheilie Mathews Hennigan, for a decree awarding to her an absolute divorce and custody of their two small children. The husband in the same proceeding sought similar relief in his favor. Two judgments were rendered by the trial court and from these separate appeals were taken. On rule by the husband the trial court awarded to him the custody of the children. From this decree Mrs. Hennigan appealed. Later the same court heard the case on its merits and awarded to the husband an absolute divorce and custody of the children. This decree was also appealed by Mrs. Hennigan. On the docket of this court the appeals are numbered 9872 and 9878.
*518 Marie Thornton and Shellie Mathews Hennigan, Jr., were married in Natchi-toches Parish on June 12, 1958. Several weeks thereafter they moved to Shreveport where they lived together as man and wife until their separation on May 15, 1962. During the marriage two children were born, aged one and three years at the time of trial.
After living at different addresses, Mr. and Mrs. Hennigan in January, 1962, occupied an apartment on West 72nd Street, owned by Mr. and Mrs. Ivory Blunt, who lived in a rear apartment of the dwelling. A few months later the Blunts separated because of domestic difficulties and Mr. Blunt persuaded the Hennigans to move to 3720 Peyton Street, property owned by him and containing two apartments. Mr. Blunt occupied a small room with bath, and the Hennigans lived in the remainder of the house. The building had two front entrances, and a connecting door between Mr. Blunt’s room and the Hennigan apartment that was kept locked. When they separated Mr. Plennigan moved out and Mrs. Henni-gan remained there for several weeks until she returned to her mother’s home in Natchitoches Parish.
Mrs. Hennigan alleges her husband committed adultery on the night of May 14, 1962, with Mrs. Joyce Tatum and that this was the cause of the separation between herself and Mr. Hennigan. The defendant, through reconventional demand has charged his wife with adultery on many occasions, dating as far back as June, 1958, the month they were married. Principally, however, counsel for the husband seems to rely on the charges that Mrs. Hennigan was guilty of acts of adultery with Mr. Blunt at various times between January 1, 1962, and June 16, 1962.
A careful examination of the record discloses that neither plaintiff nor defendant has produced sufficient proof of adultery. All the evidence offered is circumstantial and as such must meet the test of being so convincing as to exclude any other reasonable hypothesis but that of guilt. Application of this legal principle is found in Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954) where the court observed that although the unfaithfulness of a spouse may be established by indirect or circumstantial evidence, the facts and surrounding circumstances must be such as to lead fairly and necessarily to the conclusion that adultery had been committed as alleged. The court upon determination of the facts presented, held the evidence was insufficient where it disclosed the wife had visited a single man in his apartment several times, and that she had met a man with whom she had had a long standing friendship at a cocktail lounge, on several occasions, and reasoned:
“Applying this principle to the facts of the case at bar, we have no hesitancy in deducing that the evidence submitted by plaintiff falls short of establishing the adultery of his wife. The most that can be said is that Mrs. Hayes has been exceedingly indiscreet in visiting a single man in his apartment where the opportunity of committing adultery was, in the main, unrestrained. But, as stated in Savin v. Savin, supra [218 La. 754, 51 So.2d 45], ‘ * * * for us to declare that they did, we must draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery’. This we cannot and should not do in the absence of other circumstances of such a nature as to make the conclusion fairly certain that the parties not only had the opportunity to commit the act but that they went to the place where it allegedly occurred for that purpose and that it was accomplished.” (73 So.2d 179, 180)
In Bosch v. Bosch, La.App., 143 So.2d 284 (4th cir., 1962) the defendant, living alone, occupied a house and a tenant named Acy occupied a small rear apartment. The two were partners in a small business enterprise. Acy’s apartment had an outside *519 entrance but also there was an inside door between the quarters which permitted one to proceed from defendant’s quarters to the apartment, and vice versa, without having to enter from the outside. The husband employed detectives to check on the activities of the defendant wife. The court, after weighing the evidence to the effect that Acy was seen entering the premises through the door of defendant’s living quarters, resolved that a conclusion that Acy did not proceed to his own apartment would not be in order.
We consider first the husband’s charges against his wife. All of these rest upon circumstantial evidence or asserted admissions of infidelity by Mrs. Hennigan. Some testimony related to incidents which were said to have occurred shortly after the marriage and during a period when she and her husband were apparently happy and their two children were born. Mrs. Joyce Tatum testified Mrs. Hennigan told her of these illicit relationships, but the trial judge refused to believe Mrs. Tatum’s testimony, and so do we. Other testimony against Mrs. Hennigan was given by witnesses who acknowledged they had not observed Mrs. Hennigan commit an immoral act. Principally, the defendant relied on the testimony of two detectives who were engaged to keep Mrs. Hennigan and Mr. Blunt under surveillance at 3720 Peyton Street. This vigil was maintained from May 22 to June 16, 1962. These witnesses said they did not observe any immoral or improper conduct. Mrs. Hennigan and Mr. Blunt positively denied any wrongful act. Mr. Blunt was an elderly man and after the separation between Mr. and Mrs. Henni-gan, Mr. Hennigan called upon Blunt, thanking him for his many kindnesses to his family, and requested him to look after his wife. This evidence, considered in its entirety, does not constitute proof of adultery.
Nor do we find merit in the charges by Mrs. Hennigan that her husband was guilty of adultery with Mrs. Joyce Tatum on the night of May 14, 1962. Mrs. Hennigan and Mrs. Ruby Blunt testified that they saw Mr. Hennigan enter the apartment of Joyce Tatum at that time, and although they waited outside in their automobile until daybreak, they did not see Mr. Henni-gan leave the apartment. The trial court disbelieved this testimony and ruled Mr. Hennigan did not commit adultery. We agree with this finding.
The trial judge apparently was of the opinion the charges of Mr. Hennigan against his wife were sufficient to justify a finding of one or more acts of adultery on her part and disclosed such parental irresponsibility as to justify awarding the small children to her husband. Our examination of the record impels us to disagree with the court’s findings. In our opinion the record is devoid of evidence showing adultery or moral turpitude on the part of Mrs. Hennigan as to require the court to take from her her two small children.
Accordingly, the judgment from which appealed is reversed and the demands of both appellant and appellee are denied. Plaintiff’s suit and defendant’s reconven-tional demand are dismissed with prejudice. Costs are assessed against Shellie Mathews Hennigan, Jr.
BOLIN, J., dissents with written reasons.