PER CURIAM.
As authorized by Section 25 of Article VII of the Louisiana Constitution of 1921, LSA and by LSA-R.S. 13:4449, and in compliance with Rule XII, Section 4, of the Supreme Court, 8 LSA-R.S. this court does herewith apply to the Honorable, the Supreme Court of Louisiana, for instructions on a question of law arising in the abovc-captioned proceeding.

Facts.

The question at issue is whether, in a proceeding by a wife to change a prior custody decree, the husband is entitled to claim a physician-patient privilege in order to bar the testimony of a psychiatrist under whom he had previously undergone psychiatric treatment; or, if not, to what ex *54 tent the testimony of the psychiatrist may be limited as incompetent and an invasion of privacy.
Article VI, Section 12, Louisiana Constitution of 1921 provides: “The legislature shall provide for the interest of State Medicine in all its departments * * * for protecting confidential communications made to practitioners of medicine and dentistry and druggist by their patients and clients while under professional treatment and for the purpose of such treatment.”
However, according to State v. Genna, 163 La. 701, 112 So. 655 (1927), the foregoing provision is not self-operative, which implies that an act of the legislature must provide for the privilege in civil cases. By LSA-R.S. 15:476, Code of Criminal Procedure, the legislature has specifically provided :
“No physician is permitted, whether during or after the termination of his employment as such, unless with his patient’s express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient’s physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient’s physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him.”
The husband claims that a similar privilege exists in his favor in civil proceedings such as the present, where communications were made by him to an attending physician, and where the attending physician may have reached opinions based upon such privileged communications by reason of the patient-doctor relationship; and where the patient has not waived the privilege, for instance, by bringing suit upon the physical or mental condition of which the attending physician has privileged knowledge.
Although the legislature has not expressly provided a patient-doctor privilege in civil cases, the question was at issue in Savin v. Savin, 218 La. 754, 51 So.2d 41 (1951), a divorce suit brought by the husband based on adultery of his wife. The plaintiff husband attempted to call his wife’s doctor as a witness to show that she was-pregnant. The District Court sustained the defendant’s objection. The Supreme Court quoted with approval from the opinion of the trial judge:
“ * * * on the trial of the case, when the doctor was presented as a witness by the plaintiff, defendant refused to waive her legal right not to-have the doctor disclose the nature of her visit and the result of his examination, if he made one.” 51 So.2d at 44.
Law review treatment of the question has indicated that the Supreme Court decision in this case may have recognized at least tacitly the existence of the physician-patient privilege in civil cases. 31 Tul.Law Rev. 192 et seq.; 24 La.Law Rev. 344-346; 20 La.Law Rev. 418 et seq.
On the other hand, at least two court of appeal decisions have denied the existence of the privilege in civil cases. In Boulware v. Boulware, 153 So.2d 182 (La.App. 2 Cir., 1963), a custody suit, the court disallowed the privilege in order that a psychiatrist could testify as to the mental condition of the defendant-mother. In Tooley v. Provident Life and Accident Insurance Co., 154 So.2d 617 (La.App. 4 Cir., 1963), the court cited the Morgan v. American Bitumuls Co., 39 So.2d 139 (La.App. 1 Cir., 1949), a compensation case affirmed without discussion of this point, 217 La. 968, 47 So.2d 739 (1950), and Shepard v. Whitney Nat. *55 Bank of New Orleans, 177 So. 825 (La.App. Orl., 1938), for the proposition that:
“Whatever privilege a patient may have regarding communications with his doctor or hospital, once a patient institutes a suit, in the prosecution or ■defense of which such communications or records are necessary and relevant, no privilege exists, in which event such records are admissible, or the doctor may be ordered to appear and testify under proper subpoena.” 154 So.2d at 618.
See also Rhodes v. Metropolitan Life Ins. Co., 172 F.2d 183, 184 (C.A. 5 Cir., 1949).
The relator husband urges that these court of appeal decisions, except the Boul-ware case, may be distinguished in that they concerned persons who waived the privilege by bringing suit for personal injuries; and further, that all of them including Boulware, may be in conflict with the Supreme Court’s decision in Savin. Counsel further contends most strongly that the state constitution has mandatorily provided for a patient-doctor privilege in circumstances similar to the present, and that the legislature’s inaction cannot deprive relator of his constitutional privilege; that to hold that the legislative inaction has this effect amounts to a denial of due process to him and of his constitutional right to privacy of the person and of thought; and that these constitutional questions were not raised in Louisiana decisions not recognizing the privilege, which are thus distinguishable and are thus not authoritative in the present situation, where the constitutionality of denying the present patient his privilege is specifically raised.
Similarly, no privilege in favor of clergymen exists in civil cases by reason of any ■statutory enactment. Similarly, counsel suggests, persons may be discouraged from consulting a clergyman or a psychiatrist to save a marriage, if no privilege exists so that communications made in the confidence ■of the confessional or the treatment couch may subsequently be publicly aired to the prejudice of the confiding person.
There is likewise some question as to the competency as evidence of a person’s interior thoughts which have not manifested themselves in anti-social behavior, when these interior and often subconscious tendencies or thoughts have been educed by skilled psychiatric examination into verbalized expression as a means of psychiatric cure.
Professor George Pugh, Louisiana authority on the law of evidence, has recently expressed with some perception the problem now before us, 24 La.Law Rev. 346:
“Will a mother [father] who has been awarded custody seek the psychiatric help she senses she needs if she is aware that the testimony of the psychiatrist may result in loss of her children?
“The problem is extremely difficult. Will society’s best interest be served by recognition or non-recognition of a physician-patient privilege in civil cases ? There are areas in which many might agree that no physician-patient privilege should exist. If plaintiff puts his physical condition at issue seeking money on a personal injury claim, he should not be heard to suppress the testimony of a physician as to that very condition. Similarly, where a person has consulted a physician and then takes out a life insurance policy, neither he nor the beneficiary under the policy should be permitted to prevent disclosure as to the results of that consultation. But there are circumstances where many would argue that society’s interest would best be served by a rule of privilege. For example, shouldn’t a party to a divorce or separation proceeding based on adultery be able successfully to claim privilege as to testimony by a physician consulted for the cure of a ‘social disease,’ or the testimony of a psychiatrist as to the revelation of extra-marital relations? *56 Doesn’t society have a greater interest in encouraging the cure of the physical or mental illness of the marital partner than in affording a means to prove the grounds for dissolution of the marriage ?
“The Supreme Court of Louisiana has not yet spoken definitively as to the existence vel non of a physician-patient privilege in civil cases. What the decision will be is still a matter of doubt. As has been seen, complex policy considerations, not easy of resolution, are involved.”
The trial court overruled the plaintiff husband’s claim of privilege when the testimony of his former attending psychiatrist was sought to be educed. (The psychiatrist found his appearance “distasteful”, but in compliance with a court ruling was prepared to testify.) The trial court stayed further proceedings, however, so that the husband could obtain supervisory review of this ruling.
We granted certiorari because the jurisprudence is uncertain as to the question and because of the irreparable injury the husband might sustain (if indeed his communications to his psychiatrist are privileged) by the public airing of any unflattering innermost tendencies discerned by the psychiatrist’s analysis of the husband’s subconscious.
Having granted certiorari, a majority of this court is uncertain whether the husband is entitled to the privilege claimed, or whether such a privilege should be recognized by the Louisiana jurisprudence either as a matter of constitutional right or of public policy under present circumstances. As Professor Pugh’s scholarly conclusion indicates, the Supreme Court of Louisiana must be the ultimate source of decision as to whether the claimed privilege should be recognized in circumstances such as the present. Considering these factors and also the uncertainty of the legal authorities on the subject, we are therefore exercising our constitutional authority to certify the questions of law here raised to the Supreme-Court.
The questions upon which we desire instructions are these:
I.
Under the above circumstances, are the husband’s communications with his physician or attending psychiatrist privileged?'
II.
If so, does this privilege include any opinion or information the medical witness, may have obtained by reason of his being the attending physician?
III.
If there is no privilege, then are communications by the patient to the attending physician or psychiatrist competent evidence in a custody proceeding?
TATE, FRUGÉ, SAVOY and HOOD, JJ-