GLADNEY, Judge.
This appeal presents for review a judgment of divorce “a vinculo matrimonii” in a suit brought on the grounds of adultery. The defendant has appealed.
Counsel for appellant most earnestly asserts that the decree of the trial court is not predicated upon evidence legally sufficient to sustain a finding of adultery.
The parties, after living together more than twenty years, separated and on June 27, 1965 a judgment of separation from bed and board was rendered in favor of the *730 wife. The latter on August 22, 1966 instituted habeas corpus proceedings for the purpose of regaining the custody of her three year old child, Adolphus Waddie Thomas, III. Apparently on the same date this action for a divorce was instituted. These two suits were consolidated for purposes of trial, following which the trial judge assigned written reasons for his judgment. Therein he stated that he was convinced that Mrs. Leona Thomas had committed adultery with Bill McCoy in whose home she had spent numerous nights. With regard to the negative testimony of Mrs. Thomas, Mrs. Richard McCoy, a daughter-in-law of Bill McCoy, and a daughter, Mrs. Bessie Charfant, the court stated Mrs. Thomas’ testimony was not credible, and that of Mrs. Richard McCoy and Mrs. Charfant was not persuasive, which impression was inferred from the demeanor of said witnesses in court. Reliance by the court for proof of adulter}' was based on circumstantial evidence only and largely predicated on the testimony of a private detective, Carl McClelland.
An examination of the record discloses that supporting evidence with respect to misconduct was offered only as to three occasions, all of which are alleged to have occurred at the home of Bill McCoy at Waverly, Louisiana, on the dates of July 27-28, August 3, and August 12-13, 1966. Adultery was expressly denied by Mrs. Thomas, and Mrs. Richard McCoy testified that at all times referred to she and her husband, Richard McCoy, were present when Bill McCoy and Mrs. Thomas were in their home.
Impressed by the argument presented by counsel for appellant, we have examined the record carefully and record our findings and appreciation of the testimony of the several witnesses tendered for the purpose of proving acts of adultery between McCoy and Mrs. Thomas. Significant is the question of whether or not the evidence is sufficient to justify a conclusion that these parties were alone in the house and adultery, wholly predicated upon circumstantial evidence, should be presumed. If such evidence disclosed that Mrs. Richard McCoy and her husband were present at all times with McCoy and Mrs. Thomas, then we must conclude that improper relations did not occur as it is not reasonable to believe that under such circumstances repeated acts of adultery would take place.
Plaintiff and his first cousin, Bob McGee, testified as to their observation of the McCoy home on July 27-28, 1966. By stipulation it was agreed that John A. Jennings and a Mr. Smith, who assertedly were also present, would give similar testimony. The period of watch on July 27, 1966 lasted from 10:30 P.M. until 4 A.M. the next morning. The witness Thomas testified:
“A * * * I arrived at Bill’s house at 10:30. Leona’s car and Mr. Bill McCoy’s car was parked there by the house on the east side. I parked out in front and just sit there and watched. The lights was all burning in the house. At 11:05, I assumed it was Mr. Bill McCoy, I don’t know him — he left the house going west in a 1963 Pontiac, Texas license FRD 495. At 11:16 he returned. After he got back in the house I could see him and Leona and another man, which I didn’t know, walk by the window occasionally. At 1:30 this other man come out of the house that I didn’t know and got in a light colored Ford car and left traveling west. At 1:36 all the lights went out in the house except one in the back. At 1:46 all the lights went out and I sit there til 4:00 A.M. on July 28, at which time I left.
“Q You speak of T. Was Mr. McGee with you at all—
“A He was with me at all times.
“Q The entire time?
“A In the car.
*731 “Q What time did you leave on the morning of July 28?
“A 4:00 o’clock A.M.”
* * * * * *
As to July 28 he testified that after observing Bill McCoy and Mrs. Thomas enter the house about 9:15 he went to secure other witnesses and returned with Jennings and Smith about 10:30 P.M. His testimony follows:
“A At 10:30 as I drove back up, I saw Leona, Mrs. Thomas, and the baby getting some clothes out of her car. Then I drove around behind the railroad track and stepped up on the railroad track with Bob McGee. He ' said that he had seen the same thing. Well, at 10:30 they turned the lights off in the front rooms of the house. At 10:55 the light come on in the front room and then off for a few seconds. And then at 11:15 all the lights went out and it was completely dark. And I sit there on the railroad track, all of us did, til approximately 4:00 A.M. and I moved Mr. Jennings’ car around in front of Mr. McCoy’s house and they walked down the railroad track and got in that car and I left and went to Tallulah after some sandwiches in my car. And coffee.
“Q. What time was that?
“A That was approximately 4:00 o’clock. I moved Mr. Jennings’ car from behind the railroad track—
“Q All right, did you return to the locality ? After you got the sandwiches ?
“A I did, but I eat breakfast while I was up there and I missed them on the way when I came back. I missed them on the way between Waverly and Delhi. I mean, between Wa-verly and Tallulah, excuse me.”
Bob McGee testified to the same effect as to the vigil conducted by the same parties during the night of August 3 and it is merely cumulative, adding only that he and Jennings about 5:00 o’clock went to the house and knocked on the door to see if anyone was there and no one came to the door, after which he and the others departed.
Carl McClelland, the private detective, testified that the McCoy residence was placed under observation by him and a companion, Dean Hope, at about 7 P.M. August 12; and that Mrs. Thomas and McCoy left the house about 8:10 P.M. and returned about 8:40 P.M. They observed no activity around the house. After the return of Mrs. Thomas and McCoy, they could observe through the shaded windows moving shadows. The witness further testified:
“A No, there was no activity up until Saturday morning at 2:05 when the lights went out on the porch, and at 2:14 the lights went out in the rest of the house.
“Q Did anybody enter or leave there?
“A No one entered or left the residence during that time.
“Q How long did you remain?
“A We remained there until 5:10 in the morning. Just breaking daylight.”
As to his investigation on the following night, August 13, he testified he parked in the same place as the night before and saw the McCoy and Thomas automobiles parked at the residence. No activity was observed until 9:40 P.M. when a white man, driving a Ford, entered the house and remained until about 10:10 when he left. Mc-Clelland further testified:
“Q Was there any other activity after 10:10?
“A There was no more activity until 1:16 when all the lights went out in the house.
*732 “Q At what time was that?
“A That was 1:16. That was Sunday morning.
“Q Did you remain at your same locality and continue to observe the house?
“A We remained there until 5:30 A.M.”
The salient facts established by plaintiffs witnesses are that Bill McCoy, Mrs. Thomas and her baby were present on the occasions testified to at the McCoy home in Waverly, Louisiana; that the home was under observation during the late hours of the nights mentioned and furnishes no evidence as to the presence or absence of Mrs. Richard McCoy and her husband. Detailed testimony was given as to the time the lights came off and on in the house, which fact does not appear to us to be of importance. These facts must be considered along with other circumstances in determining whether Mrs. Thomas and Bill McCoy were alone at the times referred to. McCoy apparently was a successful business man and owned a cotton gin near his residence at Waverly. He was single and had two adult children, Richard McCoy and Mrs. Bessie Charfant of Killeen, Texas, where McCoy also had a business. Richard McCoy was married during May of 1966 and he and his wife have continuously resided in the McCoy home since their marriage and during the times herein involved. The house appears to have been rather commodious, containing two bedrooms and a den. Mrs. Richard McCoy testified that on the occasions when her father-in-law and Mrs. Thomas were at the house, Mrs. Thomas and her baby slept in one of the bedrooms, she and her husband in the other, and Bill McCoy slept in the den. Mrs. Richard McCoy also testified that if the witness McGee knocked on her door on the front side of the house she did not hear him. At the time three air-conditioners were running and making noise which could have prevented her from hearing his knock. She said that she and her husband slept in one of the back bedrooms.
Upon trial of the case Mrs. Thomas denied any improper relationship with McCoy and testified that on the occasions when she was in the home at Waverly, Mrs. Richard McCoy and her husband were present. This testimony was corroborated by Mrs. Richard McCoy.
Charges of adultery in Killeen, Texas were not supported by probative evidence. The testimony of McClelland shows no more than Bill McCoy and Mrs. Thomas were house guests in the home of his daughter, Mrs. Charfant and members of her household. Plaintiffs case fails entirely to disclose any admissions of wrong doing by Mrs. Thomas and there is no direct evidence of improper conduct on any occasion. None of plaintiff’s witnesses observed any amorous relations between the parties involved, and at all times when Mrs. Thomas was under observation her three year old child was with her.
The question for resolution addresses itself to the sufficiency of the evidence, a point of law, rather than the credibility of the witnesses. As stated in Meyer v. Hackler, 219 La. 750, 54 So.2d 7 (1951):
“Any attempt to go into the credibility of the witnesses would be a vain and useless thing, because the issue here is the sufficiency of the evidence. ' We have thoroughly reviewed the pleadings and analyzed the testimony adduced at both the trial on the merits and the antecedent rule for the custody of the child, and no intricate legal question being involved, a proper determination of the case merely requires a correct appreciation of the conclusiveness of the evidence.” [54 So.2d 7, 9]
Appropriate also is the holding of the Supreme Court in Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954):
“Applying this principle to the facts of the case at bar, we have no hesitancy in *733 deducing that the evidence submitted by-plaintiff falls short of establishing the adultery of his wife. The most that can be said is that Mrs. Hayes has been exceedingly indiscreet in visiting a single man in his apartment where the opportunity of committing adultery was, in the main, unrestrained. But, as stated in Savin v. Savin, supra [218 La. 754, 51 So.2d 41, 45], '* * * for us to declare that they did, we must draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery.’ This we cannot and should not do in the absence of other circumstances of such a nature as to make the conclusion fairly certain that the parties not only had the opportunity to commit the act but that they went to the place where it allegedly occurred for that purpose and that it was accomplished.” [73 So.2d 179, 180]
We hesitate to place the stigma of adultery upon Mrs. Thomas predicated solely upon the evidence as above set forth. This principle is recognized in Mauberret v. Mauberret, 158 La. 899, 105 So. 6 (1925);
“The dissolution of the bonds of matrimony is no trivial matter at any time. This court will not place the stigma of unchastity upon a wife, the mother of innocent children, in any case, upon bare suspicion of guilt, but will require clear and convincing proof in all cases of this character. Some women, who are not really guilty of wrongdoing, act imprudently at times, and subject themselves unnecessarily to criticism and censure.” [105 So. 6]
The judgment from which appealed granting a divorce “A vinculo matrimonii” in favor of Dolphus Waddie Thomas, Jr. against Mrs. Leona Rogers Thomas is annulled, set aside and reversed, and the demands of plaintiff are dismissed at his cost.
BOLIN, J., dissents.