LEMMON, Judge.
Henry J. Hermes sued his wife for divorce based on her alleged acts of adultery with William P. Cahill. The wife has now appealed from a judgment granting the divorce after a trial on the merits.
The couple separated in the summer of 1969. Two or three months later Mrs. Hermes met Cahill, who was also voluntarily separated from his wife. They went out socially and came to know each other well. At the time of the alleged adultery in July and August, 1971 they were seeing each other daily.
In July, 1971 Hermes employed private investigators to observe his wife’s activities. While there was some discrepancy in their testimony, the three detectives fairly established that:
1. Cahill and Mrs. Hermes entered her upper two-bedroom apartment on July 20 at 9:15 P.M. The lights were on in both the front (where the bedrooms were located) and rear of the apartment. At 2:00 A.M., the only visible light burning was on the side. There was no light burning in the front. Cahill left the apartment at 3:30 A.M. and returned to his apartment in another section of the city. No one else entered or left Mrs. Hermes’ apartment between 9:15 P.M. and 3:30 A.M.
2. On August 24 Cahill’s car was parked in front of Mrs. Hermes’ apartment when she entered at 8:45 P.M. No one else entered or left until 11:30 P.M. when Cahill exited. Lights were burning throughout the apartment during the entire period of time.
3. On August 25 Mrs. Hermes entered the apartment at 5:50 P.M., at which time Cahill’s car was parked across the street. Several lights were on in the apartment. At 12:45 only one light was visible through two small windows on the left side. At 7:30 A.M. Cahill left the apartment. No one else entered or left between 5:50 P.M. and 7:30 A.M.
4. On August 27 Mrs. Hermes’ daughter by a previous marriage moved clothing and other items into the apartment, using a large rental truck.
Inasmuch as Hermes’ own testimony did not bear upon the alleged acts of adultery, his case in chief consisted of the testimony of the investigators.
*418 In her testimony Mrs. Hermes admitted that she and Cahill saw each other daily for several months; that he often stayed in her apartment until early in the morning; that he occasionally spent the night; that there was a possibility they would eventually marry; that she did his laundry and cooked his breakfast and some other meals; and that he paid half of the grocery bill. However, she stated that when he spent the night in her apartment, he slept in his clothes on a couch which opened into a bed.
Cahill admitted essentially the same facts and estimated that he had spent the night in Mrs. Hermes’ apartment about ten times or less. He further admitted that he was in love with her. When questioned as to his reasons for spending the night, he explained that once she had food poisoning and on other occasions he preferred not to drive after drinking in the apartment.
Both Cahill and Mrs. Hermes denied any act of adultery. Mrs. Hermes’ daughter, who testified that she moved into the apartment in May after graduating from college although she did not move all of her clothes and belongings from Baton Rouge until August, stated that she was at the apartment each night during the period in question and had never observed any wrongdoing.
In his reasons for judgment the trial judge stated that he “was not convinced under the testimony heard that Mrs. Hermes, had not committed adultery.” On appeal Mrs. Hermes contends that the trial judge thus placed the burden of proof on the wrong party.
Adultery may be proved by indirect or circumstantial evidence. Coston v. Coston, 196 La. 1095, 200 So. 474 (1941). For such evidence to be deemed sufficient to justify a factual finding of adultery, it must be more than that which raises a mere suspicion, but rather must be strong enough to lead a reasonable and just man to the conclusion that adultery has been committed.
In the present case Hermes proved by the testimony of the investigators and the admissions of his wife and her alleged corespondent that, during the period in question, the couple engaged in a close and intimate relationship, from which adultery could be reasonably inferred. While a court should not presume that the parties committed adultery on each and every opportunity, these were more than isolated instances of an occasional rendezvous. There was a consistent pattern of deliberate circumstances in which the parties had frequent opportunities for sexual intercourse and further had the type of relationship which gives rise to a disposition to take advantage of the opportunities.
Under these circumstances we believe that Hermes has sustained his burden of proof. The trial judge in this case did not change the burden of proof, but simply meant in context that he did not believe the wife’s denial of adultery nor her explanation of the circumstantial evidence.
In a second assignment of error Mrs. Hermes argued that the trial judge erred in allowing a private detective to testify from a “jointly prepared” memorandum, which she contends was incompetent because of the contradictory testimony of another investigator. We disagree. Hermes’ counsel laid a foundation to establish that the notes used by each witness were taken by him and transcribed by him or under his direction. The witnesses referred to these notes primarily for stating dates or times of day. The main discrepancy arose in the testimony of an investigator who stated an incorrect date from memory. Any such inconsistency should bear upon the weight of the evidence and not the admissibility of testimony from memory refreshed by the notes. Moreover, Mrs. Hermes and Cahill did not contradict nor dispute the facts established by the tes *419 timony of the detectives; indeed, they verified these facts.
Finally, Mrs. Hermes contends that the trial judge was prejudicially influenced when Cahill was asked, “(I)f you had committed adultery with the lady would you admit to it?” A timely objection was overruled. Cahill at first answered “no,” but then answered in the affirmative when reminded that he was under oath, while steadfastly denying any actual adultery.
The question was improper and should have been excluded. Since the witness had denied adultery, the hypothetical question argumentatively sought an answer which was not truly relevant. The witness was required to assume a fact solely for the purpose of argument based on the fact assumed to be true but denied by the witness. An innocent person who supposed chivalry would demand perjury in such a situation might truthfully give a damaging negative answer, which would be completely irrelevant to the ultimate factual issue before the court.
We believe the improper question damaged Cahill’s credibility in the eyes of the trial judge, who stated that he did not believe Cahill, specifically referring to the manner in which Cahill handled this question. The primary issue in this case, however, is not as much one of credibility as it is one of sufficiency of evidence. Most of Cahill’s testimony, which simply reiterated the facts established earlier in the trial by the husband’s circumstantial evidence and the wife’s admissions, could be either believed or disregarded without substantially affecting the overall evidence. We affirm on appellate review, not because the trial court made a credibility determination of conflicting testimony, but because the circumstantial evidence, as corroborated by the admissions, is sufficient to support the trial court’s finding of adultery.
The judgment is affirmed.
Affirmed.