287 So.2d 789 (1973)
Henry J. HERMES
v.
Marzella Verniel DEACON, wife of Henry J. HERMES.
No. 53521.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
Floyd J. Reed, Reed, Reed & Reed, New Orleans, for defendant-applicant.
Sydney J. Parlongue, Philip R. Riegel, Jr., New Orleans, for plaintiff-respondent.
CULPEPPER, Justice Ad Hoc.
This is an action by the husband for divorce on the grounds of adultery. The wife answered, denying the adultery, and filed a reconventional demand for divorce on the grounds of two years voluntary separation. The reconventional demand was subsequently dismissed by the wife. That cause of action was not at issue in the trial court, nor in the Court of Appeal. Furthermore, the wife has not assigned as error, in her application for writs to this Court, the failure of the courts below to consider her reconventional demand. Her only assignments of error relate to the husband's failure to prove his cause of action on the main demand. For these reasons, the reconventional demand is not before us, and we can grant the wife no relief under that demand.
The district court granted the husband's demand for divorce on the grounds of the wife's adultery. The appellate court affirmed, 275 So.2d 416. The wife applied for review, which was granted by this Court, 277 So.2d 441. We affirm.
The issue is whether the husband sustained his burden of proving adultery by circumstantial evidence.
The facts are that plaintiff and defendant have lived separate and apart since August of 1969. After the separation, she was employed at the Pontchartrain Hotel and lived in an apartment on Calhoun Street in New Orleans.
*790 In October of 1969, she met the alleged co-respondent, Mr. William P. Cahill, who was about 40 years of age and was also separated from his spouse. Mrs. Hermes and Mr. Cahill admit they became close friends. They saw each other almost daily. He frequently visited in her apartment on Calhoun Street. They concede that she cooked many meals for them and that he contributed to the food bill. Also, she frequently washed his clothes. Both admitted that he often remained in the apartment until late at night and that on several occasions he actually spent the night there.
Mr. Hermes employed a detective agency to establish surveillance of his wife. These detectives testified their general procedure was to follow Mrs. Hermes home from work at about 9:00 p.m. and then to observe the apartment on Calhoun Street for activity indicating the relationship between Mrs. Hermes and Mr. Cahill.
The Court of Appeal correctly found the testimony of these detectives establishes the following facts regarding the nights of July 20, August 24 and August 25 of 1971, on which adultery is alleged to have occurred:
"1. Cahill and Mrs. Hermes entered her upper two-bedroom apartment on July 20 at 9:15 P.M. The lights were on in both the front (where the bedrooms were located) and rear of the apartment. At 2:00 A.M., the only visible light burning was on the side. There was no light burning in the front. Cahill left the apartment at 3:30 A.M. and returned to his apartment in another section of the city. No one else entered or left Mrs. Hermes' apartment between 9:15 P.M. and 3:30 A.M.
"2. On August 24 Cahill's car was parked in front of Mrs. Hermes' apartment when she entered at 8:45 P.M. No one else entered or left until 11:30 P.M. when Cahill exited. Lights were burning throughout the apartment during the entire period of time.
"3. On August 25 Mrs. Hermes entered the apartment at 5:50 P.M., at which time Cahill's car was parked across the street. Several lights were on in the apartment. At 12:45 only one light was visible through two small windows on the left side. At 7:30 A.M. Cahill left the apartment. No one else entered or left between 5:50 P.M. and 7:30 A.M."
Mrs. Hermes and Mr. Cahill deny committing adultery. They say that on the nights he spent in the apartment, he slept in his clothes on the couch, and she slept in her bedroom.
They also rely on the testimony of Mrs. Hermes' daughter by a previous marriage, who graduated from college and moved into the apartment in about May of 1971. The daughter testified she was at the apartment each night during the period in question and that she observed no wrongdoing between her mother and Mr. Cahill. However, she conceded that she frequently was out on dates at night.
In Kendrick v. Kendrick, 232 La. 1104, 96 So.2d 12 (1957), we quoted with approval the following statement of the applicable law:
"`The jurisprudence, as recently crystallized in the cited cases, is to the effect that, while proof of adultery may be established by indirect or circumstantial evidence, as well as by direct evidence, and a prima facie case for divorce on the ground of adultery may be made by facts or circumstances that lead fairly and necessarily to a conclusion that adultery has been committed, courts must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon them experiences and observations of life, and, weighing all with prudence and care, give effect to its just preponderance. Further, that in these modern times, the mere fact that a man and a woman are alone together does not necessarily presume it is for an affaire d'amour. Harris *791 v. Harris, 228 La. 19, 81 So.2d 705; Savin v. Savin, 218 La. 754, 51 So.2d 41, and the cases therein cited.'"
In Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954), we stated that circumstantial proof of adultery "must be so convincing as to exclude any other reasonable hypothesis but that of guilt."
In the present case, we find no error in the conclusion of the trial judge that adultery was proved. The close and intimate relationship of the parties is of particular significance. They were both separated from their respective spouses. They saw each other almost daily. He often stayed in her apartment until early in the morning. Occasionally he spent the night. They say they are in love and possibly will eventually marry. She did his laundry and cooked his breakfast and some other meals. He paid half of the grocery bill. Under these admitted circumstances, the testimony of the detectives as to the specific occasions in question is sufficient to exclude any reasonable hypothesis but that adultery was committed.
Relator seeks to discredit the testimony of the three detectives by suggesting they used jointly prepared memoranda. The record shows that Investigator Perry wrote his notes on a small pad, from which he later personally typed the notes used to refresh his memory. Investigator Johnson dicatated his notes into a field recorder which was later transcribed by a secretary and checked by Johnson. Investigator Burns used the same procedure as Johnson. There was some confusion because Burns did not dictate any notes on the night of August 25th and had to testify from memory.
It is clear that as to Investigator Perry, who personally took his own notes and later typed them, there can be no objection to his use of these notes to refresh his memory. Furthermore, as to the notes dictated in the field by Johnson and Burns, and later transcribed for them by a stenographer under their supervision, this procedure is also proper. See Poole v. Poole, 189 So.2d 75 (La.App.1966), writ of certiorari denied, 249 La. 719, 190 So.2d 235.
These notes were used by the detectives principally for the purpose of refreshing their memory as to dates and times, rather than events. We find no error by the trial judge in allowing the use of these notes.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
BARHAM, J., dissents and assigns reasons.
CALOGERO, J., dissents.
BARHAM, Justice (dissenting).
The issue is whether the husband sustained his burden of proving adultery by circumstantial evidence, on the nights of July 20, August 24 and 25 of 1971. The husband relied on the testimony of private detectives hired by him to keep his wife under surveillance. Their general procedure was to follow Mrs. Hermes home from work, and to observe her apartment on Calhoun Street for activity between herself and Mr. Cahill, the alleged correspondent. Their testimony as to the three nights in question was to the effect that Cahill often spent time at Mrs. Hermes'; frequently such visits were until late at night or early morning; sometimes there were few lights burning; on one occasion Cahill stayed all night; no one else was seen entering or leaving on the occasions in question.
Mrs. Hermes and Mr. Cahill deny committing adultery. They say on the night he spent in the apartment, he slept in his clothes on the couch, and she slept in the bedroom. Mrs. Hermes' grown daughter testified she was at the apartment each night during the period in question, and that *792 she observed no wrongdoing between her mother and Mr. Cahill.
In Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954) we said: "* * * the circumstantial proof in these cases must be so convincing as to exclude any other reasonable hypothesis but that of guilt." We also said in Savin v. Savin, 218 La. 754, 51 So. 2d 41 (1951):
"Plaintiff has amply succeeded in proving that the occasions were numerous when defendant and Thomas had the opportunity of committing adultery. But for us to declare that they did, we must draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery. Such deduction is far from being in harmony with present day social standards."
The majority seems to feel that the fact of Mrs. Hermes doing Cahill's laundry, cooking some of his meals and letting him contribute to the grocery bill excludes the reasonable hypothesis of innocence that is to be presumed in such a suit. (The mover has the burden of proof). Such a hypothesis can be inferred from Mrs. Hermes' and Mr. Cahill's testimony, and is significantly strengthened by her daughter's testimony. The word of three people present in the apartment, where the alleged adultery is said to have taken place, is disregarded in favor of three detectives standing outside on'the ground level (this was a second floor apartment) observing when lights were on or off. Mr. Hermes did not prove adultery by excluding every reasonable hypothesis but guilt.
Moreover, this evidence of adultery two years after the separation of the parties is at best suspect. It even is doubtful as a basis for divorce at so late a date. Certainly this alleged adultery was not the cause of the separation or the deterioration of the marriage. Had defendant not dismissed her reconventional demand for divorce on the "no fault" ground of living separate and apart for two years, we would have maintained that action over this action based on adultery. The ground for divorce should be that ground which caused the marriage to dissolve.
For the foregoing reasons, I respectfully dissent. The judgment of the Court of Appeal should be reversed.