356 So.2d 1101 (1978)
Frank W. BRUNER, Jr., Plaintiff-Appellant,
v.
Mavis Smith BRUNER, Defendant-Appellee.
Mavis Smith BRUNER, Plaintiff-Appellee,
v.
Frank W. BRUNER, Jr., Defendant-Appellant.
Nos. 13485 and 13486.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1978.
Rehearings Denied April 4, 1978.
Writ Granted May 12, 1978.
*1103 Francis M. Gowen, Jr., Shreveport, for plaintiff-appellant in no. 13485 and defendant-appellant in no. 13486.
Booth, Lockard, Jack, Pleasant & Lesage by H. F. Sockrider, Jr., Shreveport, for defendant-appellee in no. 13485 and plaintiffappellee in no. 13486.
Before PRICE, HALL and MARVIN, JJ.
En Banc. Rehearings Denied April 4, 1978.
PRICE, Judge.
These are appeals in related suits in which judgments were rendered awarding a wife a divorce on the husband's adultery, recognizing past due pendente lite alimony, and awarding permanent alimony.
We affirm the judgment of divorce, modify the judgment accruing alimony pendente lite, and reverse the award of permanent alimony.
The background of this litigation is as follows: Frank Bruner, Jr., obtained a legal separation from Mavis Bruner on April 7, 1976, on grounds of Mavis Bruner's habitual intemperance. By consent and in response to a preliminary rule in this matter, Mavis Bruner was awarded alimony pendente lite of $350 per month and use of the community residence. Frank Bruner was ordered to pay the monthly installments on the mortgage note, all utilities, and to maintain certain insurance policies. On March 15, 1977, Mavis Bruner filed suit for a divorce on grounds of adultery and for permanent alimony. On April 13, 1977, after the accrual of one year from his obtaining the separation decree, Frank Bruner filed suit for a final divorce under La.R.S. 9:302. Mavis Bruner filed exceptions of lis pendens and no cause of action to this suit. In May 1977 Mavis Bruner filed a rule to accrue past due alimony pendente lite. Frank Bruner answered claiming offsetting credits for amounts paid to third persons on behalf of Mavis Bruner.
All of the pending proceedings were consolidated and tried together. The trial court sustained the exception of no cause of action in Frank Bruner's suit for final divorce under R.S. 9:302 and awarded Mavis Bruner a divorce in her suit based on adultery. The court also awarded her permanent alimony of $689.25 per month on finding that her preseparation fault no longer precluded her from alimony under La.C.C. Art. 160 because of the act of adultery committed by her husband after the separation. The court recognized an arrearage of $832.83 in pendente lite alimony subject to the offset claimed of $851.21.
Frank Bruner has appealed from all of the trial court's rulings other than the allowance of the offset against the accrued alimony. Mavis Bruner has answered the appeals asking for an increase in the amount of permanent alimony, modification of the judgment accruing alimony pendente lite to deny the offsets claimed, and for reasonable attorney fees in obtaining the past due alimony.
The principal issues presented for review are:
1. Was the evidence sufficient to sustain the trial court's finding of adultery?
2. Was the trial court correct in sustaining the exception of no cause of action in Frank Bruner's action for divorce under R.S. 9:302?
3. Was Mavis Bruner entitled to permanent alimony after having been found at fault in the prior separation from bed and board?
4. Was the trial court's award of past due alimony and the offset allowed against it correct?
*1104 PROOF OF ADULTERY
The proof relied on to establish adultery was by circumstantial evidence. Appellant contends the evidence did not exclude every other reasonable hypothesis other than adultery as required by the jurisprudence. This is primarily a factual determination which must be resolved in a large part by the credibility of the testimony of the parties and evaluation of the circumstances of the relationship shown in the light of generally accepted standards of conduct. In such matters the findings of the trial court should be left undisturbed in the absence of a showing of manifest error. The Supreme Court recently reemphasized the trial court's discretion in domestic affairs, stating:
. . . In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir. 1976). The factual findings of the trial court are therefore to be accorded very substantial weight on review, (cite omitted) Pearce v. Pearce, 348 So.2d 75 (La.1977)
The trial court based its finding that adultery was proven on the following undisputed circumstances: About the time Frank Bruner separated from his wife in the early fall of 1975, he began a relationship with a local widow. After his separation he moved into his elderly mother's residence on Unadilla Street in Shreveport. In November 1975 he began a pattern of seeing the widow daily. He stopped by her home for coffee on his way to work each morning and returned for dinner each evening. On occasion they dined together at public restaurants. His visits at night usually lasted until bedtime, although on a few occasions he fell asleep watching television and stayed until after midnight. During this period of time they made several outof-town trips to golf tournaments and occupied adjoining and connecting motel rooms. In March 1977 Frank Bruner's mother became hospitalized and for a period of seventeen days he stayed at the widow's home overnight. The widow lived alone at this time as her children were grown and married. Both testified they have a romantic interest in one another and have had discussions concerning marriage at such a time that Frank Bruner obtained a final divorce.
The foregoing circumstances are adequate without acceptable explanation to exclude any other reasonable hypotheses and to lead to a reasonable conclusion that adultery did occur.
The testimony of Frank Bruner and his alleged accomplice deny that any sexual relations have occurred between them. They seek to explain that they have had a proper social relationship between two middle-aged persons (fifty-one and fifty-two) who have developed an attraction for one another. They contend the reason Frank Bruner moved into the widow's home during the period his mother was hospitalized was to make it more convenient for the widow to care for the needs of Frank's mother and her home while she was hospitalized. They also contend Frank needed someone to care for him during his mother's illness. The trial judge did not find that this explanation overcame the presumption of adultery created by the circumstantial evidence. His conclusion is supported by substantial evidence and is in accord with the decision of the Supreme Court in Hermes v. Hermes, 287 So.2d 789 (La.1973), a case which is analogous both factually and legally to the present suit. Under present jurisprudential standards, it would be reasonable to conclude that a married man, who has an admitted romantic relationship with an unmarried woman, and who spends seventeen consecutive nights with that woman has placed himself in a position to warrant a finding of adultery. Certainly when the trial judge observes the witnesses and concludes that adultery has occurred under these circumstances, it would be unreasonable for us to reverse that factual finding.
*1105 DISMISSAL OF FRANK BRUNER'S ACTION UNDER LA.R.S. 9:302
The record shows Mavis Bruner filed her action for divorce based on postseparation adultery prior to the accrual of Frank Bruner's right to apply for a final decree under R.S. 9:302. These circumstances bring the trial court's dismissal of Frank Bruner's action within the holding of the First Circuit in Cox v. Cox, 341 So.2d 1351 (La.App. 1st Cir. 1977) in which the court resolved this issue as follows:
He further argues that he should be granted judgment on his reconventional demand under R.S. 9:302, since, when it was filed, more than one year had elapsed since the rendition of the judgment of separation. The petition for divorce was filed by Mrs. Cox over a week before the lapse of one year from the date of separation. Her main demand for divorce therefore took precedence over the reconventional demand, and the divorce judgment was properly granted in her favor. McCaa v. McCaa, 163 So.2d 434 (La.App. 2nd Cir. 1964); Perry v. Perry, 207 So.2d 819 (La.App. 1st Cir. 1968).
The exception of no cause of action was properly sustained.
RIGHT TO PERMANENT ALIMONY
Appellee presents a two-fold argument to support her claim to permanent alimony in spite of her having been determined "at fault" in the prior separation proceeding.
Primarily she contends the decision in Fulmer v. Fulmer, 301 So.2d 622 (La.1974) declares that the wife's fault previously determined in a separation decree shall not be dispositive on the question of her right to alimony where a divorce is sought for postseparation fault such as adultery. Although the trial court apparently followed this expression in awarding appellee alimony, we consider this discussion of this issue in Fulmer dicta and not binding on the appellate courts.
She further acknowledges that the recent decision of the First Circuit in Bennett v. Bennett, 349 So.2d 909 (La.App. 1st Cir. 1977) concerning the identical legal issue is adverse to her position. She contends the result reached in Bennett is an unconstitutional application of the language of La.C.C. Art. 160 because it gives the husband favored treatment in the effect postseparation fault has on the payment of permanent alimony. Appellee argues that "both husbands and wives who have obtained their legal separations and thereby have secured themselves either from or to post litem alimony may through their carelessness and moral turpitude forfeit those rights by committing adultery." Appellees contend sexual discrimination exists under the Louisiana Constitution of 1974 if the husband who is at fault in the separation may deprive the wife of her right to permanent alimony because of her postseparation adultery, but the wife who was at fault in the separation may not have her right to alimony restored by proving postseparation adultery on the part of the husband. In view of the recent Louisiana Supreme Court decision in Loyacano v. Loyacano, 358 So.2d 304 (La.1978), this argument has no merit. This decision holds that husbands are also entitled to the benefits of Art. 160 to render the article nondiscriminatory under the Louisiana Constitution of 1974. The preseparation fault once determined will operate as a bar to future alimony claims of either spouse under Art. 160 without regard to postseparation conduct of the other party. There is no discrimination because of sex in this result.
Appellee alternatively contends that even though she was found at fault on proof of habitual intemperance in the separation decree obtained by her husband, her conduct was caused by alcoholism which is an involuntary disease and she was not "at fault" in the sense this term is intended under Art. 160. She relies on expressions of the appellate court decision in Pearce v. Pearce, 344 So.2d 75 (La.App. 4th Cir. 1977). The Pearce decision, which was overruled by the Supreme Court on other grounds, 348 So.2d 75 (La.1977) is not applicable to the issue before us as in Pearce there had been no considered determination of fault in the separation proceedings which was *1106 based on one year living separate and apart. Once fault has been judicially determined in the separation proceeding, it should be definitive for the purpose of alimony eligibility under Art. 160.
The trial court properly rejected appellant's argument based on Pearce, but was in error in awarding permanent alimony under his finding that the subsequent adultery of appellant purged the preseparation fault of appellee. Therefore, the award of alimony should be reversed.
ACCRUAL OF PAST DUE ALIMONY AND AWARD OF OFFSETTING CREDITS
The judgment ordering appellant to pay pendente lite alimony provides in part as follows:
. . . ordering the defendant in rule to pay unto the plaintiff in rule the sum of THREE HUNDRED FIFTY AND NO/100 ($350.00) DOLLARS per month as alimony pendente lite, payable $350.00 on the fifteenth day of each month, commencing December 15, 1975, and that plaintiff in rule be granted the use of the home at 7112 Creswell Street, Shreveport, Louisiana, with defendant in rule being ordered to pay the house payment in connection with said home, that he be ordered to pay the following utility bills: electricity, gas and water (but not the telephone bill), and that he be responsible for the upkeep on said property.
Appellant paid the $350 per month payment provided by the judgment each month through the date of trial. The dispute centers on the effect a subsequent community property settlement on January 19, 1977, giving appellee the residence on Creswell and a sale by her of this property on February 11,1977, has on the obligation of appellant to pay under the provisions of the judgment. Appellee contends the provision for appellant to pay the mortgage payment and utilities was intended to be a housing allowance, and his obligation to pay an equivalent amount continued on after her disposition of the house. The trial judge accepted this contention and awarded judgment accordingly.
The court was in error in its evaluation of the effect of the judgment. There is no ambiguity in the language employed. By disposing of the home, appellee has extinguished the obligation of appellant to continue paying the mortgage payments or utilities. The judgment makes no provision for an alternate payment in the event the home was sold. Where no ambiguity exists, the court was in error in seeking to determine the intent behind the provisions in question.
A second provision of the judgment ordered appellant to maintain present policies of insurance for appellee, including hospitalization, car, household, fur, and jewelry insurance. Appellee claims an arrearage for life insurance premiums of $18.05 per month. As the judgment specifies which forms of insurance are included and does not list life insurance, there is no obligation on appellant for this item. There is also a claim for a renewal of the premium for auto insurance on February 7, 1977. This premium of $176 when prorated to date of trial of the rule is approximately $75, and appellee is entitled to judgment for this amount.
Appellant was allowed a credit or offset of $851.21 by the trial court for payments to third parties on appellee's behalf.
There is no evidence showing these payments were made at the request of or with the consent of appellee. Therefore, under the jurisprudence these credits should not have been allowed. See Odum v. Odum, 273 So.2d 576 (La.App. 1st Cir. 1973).
The trial court properly denied appellee's request for attorney fees in recovering past due alimony under these circumstances.
DECREE
For the foregoing reasons, the judgment in favor of Mavis Bruner against Frank W. Bruner, Jr. (Suit NO. 243,714 of the First Judicial District Court) is amended to reject the demands of plaintiff for permanent alimony *1107 and as amended, the judgment is affirmed.
The judgment appealed in the suit of Frank W. Bruner, Jr. v. Mavis Bruner (Suit NO. 233,798 of the First Judicial District Court) sustaining the exception of no cause of action and rejecting the demands of plaintiff, Frank W. Bruner, Jr., is affirmed.
The judgment appealed on the rule brought by Mavis Bruner to accrue alimony in the foregoing styled suit is amended to reduce the amount of past due alimony provided in paragraph III thereof from $832.83 to $75, and is further amended to delete the offset allowed Frank W. Bruner, Jr., by paragraph IV of the judgment, and his demands for this relief are rejected. As amended, the judgment is affirmed.
Costs of this appeal are assessed equally to appellant and appellee.
MARVIN, J., concurs in part and dissents in part.
MARVIN, Judge (concurring in part and dissenting in part).
In written reasons for judgment, the lower court concluded:

"The actions of these people are not acceptable to the majority of people in today's society. They are not governed by the standards of Florida, or California but the standards of the majority of this state's populace. If the Court cannot find adultery under these facts what will prevent a couple from:
1. Living in an adulterous relationship for years, but
2. Attempt[ing] to hide the fact by keeping their clothes in separate bedrooms, and
3. Making it appear to their friends that two beds have been slept in, and, then
4. Testify[ing] their relationship is purely platonic and they have never had sexual relations?
"The Court cannot go that far.
"The facts of this case are extremely close to those in Hermes v. Hermes, 287 So.2d 789 (La.1974). It would appear that Mr. Bruner and M. T. were following the Hermes script, with only a few minor changes."
Recognizing, of course, that adultery can be proved by circumstantial evidence, Hermes expressly held that the circumstances must fairly and necessarily lead to the conclusion that adultery has been committed. Hermes then followed that holding with this observation:
"Further, that in these modern times, the mere fact that a man and a woman are alone together does not necessarily presume it is for an affaire d'amour." 287 So.2d 790.

Savin v. Savin, 218 La. 754, 51 So.2d 41 (1951) was cited in Hermes as authority. Savin observed:
"Plaintiff has amply succeeded in proving that the occasions were numerous when defendant and Thomas had the opportunity of committing adultery. But for us to declare that they did, we must draw upon our imagination, and rule that whenever a man and a woman have the opportunity . . ., they do commit adultery. Such an observation is far from being in harmony with present day social standards." 51 So.2d 45.

The cases are legion where we uphold the trial court's discretion in determining facts and where we recognize the great weight to which this determination is granted on appellate review. If this case, however, was decided below on the basis quoted ("that the actions of these people are not acceptable to the majority of people in today's society" and if adultery is not found in this case then other people will commit adultery), as I deem that it was, then the lower court has grossly misconstrued and misapplied the legal burden of proof in adultery cases. Because of its patently erroneous basis, the lower court's determination is not entitled to the traditional great weight, and we are obligated to make our own factual findings and inferences as to whether the burden of proof has been met. This is the essence of my dissent from the majority's opinion according great weight to the trial court in this particular case.
*1108 If the great weight factor is removed as it should be, I am convinced that even my brethren on the majority opinion would conclude that the burden of proof in this case has not been met and that every reasonable hypothesis negates, rather than fairly and necessarily establishes, adultery.
The lower court said "the bottom line [in this case] clearly shows adultery . . . [and] the evidence excludes every reasonable hypothesis other than adultery . . . [basing its conclusions] solely upon the actions and relationship of [the husband, Frank, and his girlfriend, Meda] . . ."
I must respectfully disagree.
Frank legally separated from his wife in 1976. Sometimes after they ceased living together Frank met Meda, a widow. Both are about 51-52 years old with grown children and are grandparents. Frank lived with his 77-year-old mother. The actions and the relationship of Frank and Meda (on which the lower court based its conclusions) essentially boil down to these circumstances:
(1) Frank and Meda have many mutual friends and are active in church and in golfing circles. Their respective and respectful character shines through the record. They are open, honest and not devious people. Frank heads a business. Meda is the widow of a deceased elected official. They enjoy each other's company and are mature and reserved people, both certainly conscious of their respective reputations and the reputation of each other. During the year preceding trial, Frank stopped at Meda's home on his way to work for coffee almost daily. Each night they dined together, more often than not at public restaurants and sometimes returned to Meda's home.
(2) In March 1977, Frank's mother was hospitalized and Frank moved into a guest bedroom in Meda's home where he stayed for 17 nights. After Frank's mother recovered, he returned home with her.
(3) On three occasions, Frank and Meda journeyed out of town where either or both of them played in senior golf tournaments (Monroe and Alexandria). On one of these trips, Meda stayed with friends in Alexandria and Frank stayed at a motel. On other trips, they stayed at the same motel in adjoining rooms.
(4) Frank and Meda admit they are contemplating marriage, but both vehemently deny any physical or sexual involvement, anywhere, anytime, anyplace.
What impresses me is the openness of the relationship. Meda's home is open to relatives and friends. Many of these people have keys to her home and are in and out at all hours. A key is often available to these people who do not have keys. Meda's grown children are in and out of the house and often arrive unannounced and unexpected. His children and Frank and Meda's mutual friends were with them at times on the out-of-town golfing trips. The motel registrations show he registered and paid for one room while Meda registered and paid for the other.
More importantly, what is not shown is:
(A) Any history of any display of petting or physical affection from one to the other.
(B) Never is there shown any state of undress. The "worst" evidence in record is that Meda is in a flannel longsleeved house robe, zipped to her neck on some of the mornings when Frank calls or on some of the mornings when he stayed at her home. We have no evidence whatsoever that he is in his robe or pajamas at anytime in her presence. Relatives and neighbors or friends have sometimes dropped in while Frank was at Meda's and he was always dressed in street clothes.
The testimony of private detectives who observed Frank and Meda for some length of time does not suggest adultery. Lights which may have been on in the rear of Meda's home cannot be seen from the front or sides of the home according to these witnesses. Frank's presence at Meda's home at all times was well explained. As I view the record, Frank and Meda were not practicing deceit or in any way attempting to cover up adultery.
Could they have committed adultery? Certainly. That is what the lower court *1109 found. But under the correct legal test, the circumstances under which adultery may be inferred must exclude all other reasonable hypotheses and must fairly and necessarily lead to the conclusion that adultery has been committed.
Did they commit adultery? I do not know, but the record falls far short of facts from which I can exclude other reasonable hypotheses and from which I can fairly and necessarily say that they did commit adultery. The mere fact that Frank and Meda were alone together, frequently or occasionally, morning or night, early or late, away from or at home, does not necessarily prove or presume adultery. Each case of alleged adultery must be determined on its own particular circumstances. But in all cases of alleged adultery the same legal burden of proving adultery should be applied.
I would reverse the lower court on the adultery issue because that issue was decided on what I believe was a misconstruction and misapplication of the legal burden of proof of adultery.
I concur in the majority opinion as to the remaining issues.