BOUTALL, Judge.
Barbara Ditcharo Hebert sued Emile K. Hebert for a separation from bed and board on the grounds of mental cruelty and later amended her petition to alternatively ask for a divorce on the grounds of post-separation adultery. The trial court granted her a divorce, finding that her husband had com *967 mitted adultery and was at fault for the separation, and that she was free from fault. The husband appeals, contesting the issue of pre-separation fault as well as the sufficiency of proof of adultery. We affirm.
The basic issue raised is the sufficiency of proof to support the decree of adultery. The evidence relied upon to establish the adulterous relationship was circumstantial. The principles of evaluation of that evidence is set forth in the ease of Hermes v. Hermes, 287 So.2d 789 (La.1973) at p. 790:
“In Kendrick v. Kendrick, 232 La. 1104, 96 So.2d 12 (1957), we quoted with approval the following statement of the applicable law:
‘ “The jurisprudence, as recently crystallized in the cited cases, is to the effect that, while proof of adultery may be established by indirect or circumstantial evidence, as well as by direct evidence, and a prima facie case for divorce on the ground, of adultery may be made by facts or circumstances that lead fairly and necessarily to a conclusion that adultery has been committed, courts must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon them experiences and observations of life, and, weighing all with prudence and care, give effect to its just preponderance. Further, that in these modern times, the mere fact that a man and a woman are alone together does not necessarily presume it is for an affaire d’amour. * * * ” (Citations omitted)
A considerable portion of the facts of this case are undisputed by the husband, and to some degree admitted. Several years prior to the separation, Mrs. Hebert discovered that her husband had committed adultery, but reconciliation followed. The parties separated the day following a discussion between them on March 31, 1978. The circumstances of this separation are disputed and will be discussed later, however, it is undisputed that the parties were unhappy and the relationship between them was unsatisfactory for many months prior to the separation. Within a couple of days from the separation of the parties, another married couple with whom they were quite friendly and with whom they often socialized, also separated. It is admitted that Hebert’s first date after the separation was with the separated wife and that her first date was with him. For the last seven months prior to trial, they dated each other exclusively, seeing each other at least three or four times a week. They were in each other’s company on most major holidays and special events. Hebert admits that he has kissed her on numerous occasions and that he wanted to have sexual relations with her but denies that he committed adultery.
It is not disputed that Hebert visited this lady at her apartment on a number of occasions. Evidence was introduced that Hebert’s Ford van had been observed at his lady friend’s apartment on numerous occasions until 2 or 3 o’clock A.M. and with some frequency until 7:30 A.M. or later. On many of these occasions there were no lights visible in the apartment. On one of these no-light nights, Mrs. Hebert called the apartment at 3:30 A.M. and spoke to her husband. On one of the 7:30 mornings, Mrs. Hebert’s brother talked to Hebert after encountering him leaving the street on which the apartment is located. There is no direct evidence that Hebert committed adultery on any of these occasions.
The trial judge recognized the problems concerned with the circumstantial evidence offered, and considered these uncontested and admitted facts enumerated above. Additionally, he considered some contested issues such as the frequency of Hebert’s staying at the apartment, and whether he and the lady were alone. Also of significance is his finding that the parties separated because Hebert told his wife he no longer loved her and spent little time at home prior to the separation.[1] Hence, *968 based on the totality of the circumstances, the trial judge found that Hebert was guilty of adultery. In such situations as this, the findings of the trial court should be left undisturbed in the absence of a showing of manifest error. We cannot state that manifest error is present here. As stated in the case of Pearce v. Pearce, 348 So.2d 75 (La.1977), at p. 78:
“In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir. 1976). The factual findings of the trial court are therefore to be accorded very substantial weight on review. Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir. 1976).”
We now pass to a consideration of the other issue raised, that is, pre-separation fault, not simply because it was raised on appeal, but because it was considered by the trial judge in his evaluation of the totality of the circumstances leading to adultery. On this issue there is a direct conflict between the testimony of the husband as to the cause of the separation, and that of the wife. This credibility call was resolved by the trial court in his characterization of Mrs. Hebert’s testimony as forthright, honest and spontaneous.
At the time of the separation, Mrs. Hebert was seven months pregnant. She had had a miscarriage the year before and was having considerable troubles with her pregnancy, confining her to bed much of the time. During this time, and indeed for some time previous, Mr. Hebert would spend very little time at home, frequently coming home from work only to change clothes and then leave, returning home late at night. Mrs. Hebert testified that he seemed unconcerned about her and about the problems in carrying the baby to full term. When Mrs. Hebert talked to her husband about their problems, he informed her that he did not love her, nor had he loved her for some time, and that there was nothing left of their marriage. When she commented as to her status with the pregnancy, he told her that she could go to her mother’s, who would take care of her and the baby. The next day she left. Under these circumstances, we agree with the trial judge’s finding that Mrs. Hebert was free from fault.
The judgment is affirmed.

AFFIRMED.

. The trial judge remarked that “the testimony between these two people themselves lead me to the inescapable conclusion that Mr. Hebert has fallen out of love with his wife for one reason or another, and that he has taken up with another woman.”