| STEPHANIE WOODSIDE JENNINGS | * | NO. 2021-CA-0386 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| QUINCY MAURICE JENNINGS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-07432, DIVISION "I-14"
Honorable Lori Jupiter, Judge
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods)

Michael J. Hall
Jonique Martin Hall
Law Office of Michael J. Hall, L.L.C.
2401 Westbend Pkwy., Suite 2102
New Orleans, LA 70114

Cherrell S. Taplin
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139

     COUNSEL FOR PLAINTIFF/APPELLEE

Edwin Mark Shorty, Jr.
Nathan M. Chiantella
EDWIN M. SHORTY, JR. & ASSOCIATES, APLC
650 Poydras Street, Suite 2515
New Orleans, LA 70130

     COUNSEL FOR DEFENDANT/APPELLANT

          **AFFIRMED**
          **DECEMBER 1, 2021**

*RBW*

*RML*

*SCJ*

This matter stems from a divorce petition where one spouse sought a fault-based divorce, and the other spouse reconvened seeking a divorce based on living separate and apart. This Court is tasked with determining whether the trial court is obligated to forgo considering a fault-based divorce when a divorce based on living separate and apart is also prayed for in a reconventional demand, as well as what is the necessary the burden of proof for a fault based divorce pursuant to adultery, physical abuse, and the existence of a protective order.

For the reasons that follow, we affirm the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2009, Defendant-Appellant, Quincy Jennings ("Mr. Jennings"), and Plaintiff-Appellee, Stephanie Woodside-Jennings ("Ms.

1

Woodside"[1]) married. Both parties considered a divorce near the end of 2009, but they ultimately sought counseling and reconciled.

On June 26, 2020, the parties began living separate and apart.

On September 3, 2020, Ms. Woodside filed a petition for divorce (hereinafter "Woodside Petition") pursuant to La. Civ. Code arts. 103(2) (adultery), 103(4) (physical abuse), and 103(5) (existence of a protective order).

On October 19, 2020, Mr. Jennings filed an answer denying the allegations in the Woodside Petition.

On January 8, 2021, Ms. Woodside filed a motion to fix a rule to show cause why an art. 103 divorce should not be granted. A hearing in the matter was set for March 16, 2021.

On January 19, 2021, Mr. Jennings filed a reconventional demand seeking a full and final divorce in his favor pursuant to La. Civ. Code art. 103(1), asserting the parties have voluntarily lived separate and apart, without reconciliation, for a period in excess of 180 days.

On February 18, 2021, Ms. Woodside filed an answer to the reconventional demand reiterating her demand for divorce under arts. 103(2, 4-5).

On April 7, 2021, Mr. Jennings's reconventional demand for a no-fault divorce, as well as Ms. Woodside's fault-based divorce, came for hearing before the trial court.

_____

[1] Ms. Woodside has returned to using her maiden name and refers to herself by this name in the court records.

The trial court rendered a judgment of divorce in favor of Ms. Woodside granting the divorce pursuant to arts. 103(2, 4-5); and denied Mr. Jennings's reconventional demand for divorce pursuant to art. 103(1).

On April 30, 2021, Mr. Jennings timely filed, and was granted, a motion and order for a devolutive appeal.

This appeal timely followed.

## DISCUSSION

### *Assignment of Error and Issues for Review*

Mr. Jennings asserts the trial court erred as a matter of law when it denied his reconventional demand for an art. 103(1) divorce and instead granted Ms. Woodside's petition for divorce under La. Civ. Code arts. 103(2), 103(4), and 103(5).

Mr. Jennings presents the following issues for review:

- Whether the trial court erred in granting an article 103(2, 4, 5) divorce when a 103(1) divorce had been prayed for and was pending prior to the filing of the 103 divorce;

- Whether the trial court erred in finding that adultery was a cause in the breakup of the marriage;

- Whether the trial court erred in finding that there had been domestic abuse in the relationship; and

- Whether the trial court erred in allowing hearsay testimony at the trial of the matter.

### *Analysis*

### *Standard of Review*

A trial court's finding of fault in a divorce is a factual determination subject to the manifest error standard of review. *Thomas v. Thomas*, 2017-0760, p. 2 (La.

App. 4 Cir. 2/21/18), 238 So. 3d 515, 518; *Noto v. Noto*, 09-1100, p. 6 (La. App. 5 Cir. 5/11/10), 41 So. 3d 1175, 1179. When findings are determined based on witness credibility, the trier of fact is granted "great deference." *Thomas*, 2017-0760, p. 2, 238 So. 3d at 518. To reverse the trial court's finding of fact, the appellate court must find that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict as manifestly wrong. *Id*.

I. *Whether the Trial Court Erred in Granting an Article 103(2, 4, 5) Divorce When a 103(1) Divorce Had Been Prayed For and Was Pending Prior to the Filing of the 103 Divorce*

Mr. Jennings first asserts his reconventional demand seeking a divorce based on La. Civ. Code art. 103(1) should have taken precedence over Ms. Woodside's petition seeking a fault-based divorce. In support of his position, Mr. Jennings relies on *Watters v. Watters*: wherein this Court reasoned that when a divorce is based on living separate and apart there is no reason to address issues of fault in a divorce. 607 So. 2d 948, 949 (La. App. 4th Cir. 1992). In *Watters*, the plaintiff-husband initially filed for a La. Civ. Code art. 102 divorce pursuant to living separate and apart. *Id*. The defendant-wife filed a reconventional demand requesting a fault based divorce because of adultery. *Id*. This Court reasoned the legislature intended for art. 102 to provide "an expeditious method of granting a divorce" and litigating fault added delays to what was intended as a streamlined process. *Id*. at 950. This Court further stated the defendant-wife would still have the opportunity to litigate fault after the divorce was granted. *Id*.

4

The current case is distinguishable from *Watters* because both parties are seeking an art. 103 divorce which allows for the possibility of fault. The primary demand seeks a fault-based divorce. When both parties are seeking a divorce through art. 103, the trial court should allow for both assertions to be tried. *Yates v. Yates*, 355 So. 2d 573, 574–75 (La. App. 3d Cir. 1978) (Wherein the court reasoned that because the primary cause of action, adultery, was pending when the reconventional demand based on living separate and apart was filed, the trial court should have considered both the principal and reconventional demands); *Ogea v. Ogea*, 378 So. 2d 984, 991 (La. App. 3d Cir. 1979) (wherein the court reasoned the trial court properly considered both the main and the reconventional demand where both parties sought a divorce based on art. 103). After hearing both demands, the trial court would have discretion to grant the divorce on either ground "depending upon the evidence adduced." *Yates*, 355 So. 2d at 575. Mr. Jennings's reliance on *Watters* is misplaced because both divorce demands are based on art. 103. Thus we find that the trial court did not err in hearing both art. 103 petitions before deciding upon which grounds to grant the divorce.

II.  *Whether the Trial Court Erred in Finding That Adultery Was a Cause in the Breakup of the Marriage and Whether the Trial Court Erred In Allowing Hearsay Testimony at the Trial of the Matter*

Because Mr. Jennings's second and fourth assignments of error are related, this Court shall examine them together. Mr. Jennings asserts the trial court erred in finding that adultery had occurred during the marriage and, in allowing hearsay testimony to prove the adultery. Mr. Jennings contends the adultery complained of

occurred early in the marriage, and the couple reconciled; therefore, adultery can no longer be used as a basis for divorce. Ms. Woodside counters that there were further acts of adultery after the couple's reconciliation which were a cause of the divorce.

The petitioner claiming adultery bears the burden of proof by preponderance of the evidence. *Tidwell v. Tidwell*, 49,512, p. 2 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1045, 1047. Adultery may be established by direct, indirect, or circumstantial evidence. *Id*. "If circumstantial evidence alone is relied upon, then the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt of adultery." *Id*. Reconciliation can be used to extinguish a cause of action for a divorce. La. Civ. C. art. 104; *Miller v. Miller*, 2013-1043, p. 9 (La. App. 3 Cir. 4/2/14), 161 So. 3d 690, 696. Ms. Woodside, as the party claiming adultery, has the burden of proof. In the present case, the evidence supporting the adultery claim came solely from testimony and is therefore circumstantial.

Because Mr. Jennings asserts the couple reconciled after his affair, this Court must consider the timeline of the marriage. Mr. Jennings and Ms. Woodside married on February 14, 2009. Shortly after marrying, still in 2009, Mr. Jennings confessed to having an extra-marital relationship, and the couple separated at the end of 2009. They received counseling through their church and reconciled in 2010. The couple remained married and lived together. Approximately nine (9) years later, in 2019, Ms. Woodside learned Mr. Jennings was engaged in a new extra-marital affair after speaking with the mistress and reviewing Mr. Jennings's

6

phone records. In June 2020, the couple separated with the intent of dissolving the marriage.

After separating, Ms. Woodside learned Mr. Jennings acknowledged being engaged in an affair in 2018. Mr. Robin Richardson ("Mr. Richardson") testified that Mr. Jennings admitted to him that he was having an extra-marital affair. According to Mr. Richardson, on June 9, 2018, he and Mr. Jennings were looking at houses together and discussing plans for flipping houses. At some point, Mr. Jennings changed the topic of conversation and showed Mr. Richardson pictures of a woman to whom he was attracted. Mr. Jennings then told Mr. Richardson, "I'm having a sexual relationship with another woman." This testimony was used as evidence showing Mr. Jennings engaged in a new, distinct extramarital affair after the couple's 2010 reconciliation.

We next turn to Mr. Jennings's assertion that the testimony of Mr. Richardson to prove the adultery allegation was inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Smith*, 2011-0091, p. 12-13 (La. App. 4 Cir. 7/11/12), 96 So. 3d 678, 687; La. Code Evid. art. 801(C). Generally, hearsay is excluded. *Id*. An exception to the general rule is a statement against interest. *Terry v. Lagasse*, 266 So. 2d 231, 233 (La. App. 4th Cir. 1972). A statement against interest is defined as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him

7

against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

La. Code Evid. Ann. art. 804B(3).

An adverse party is allowed to introduce statements which were made out of court by a party-opponent. *Terry*, 266 So. 2d at 233 (quoting *Pacholik v. Gray*, 187 So. 2d 480, 483 (La. App. 3d Cir. 1966). Additionally, when the party against whom the adverse statement is being used is afforded the opportunity of cross-examination to challenge the credibility of the witness and/or provide the full context of the statement, the statement is admissible for the trier of fact to determine credibility. *Id*. Finally, failure to object at the time the testimony is offered "constitutes a waiver of the right to object to its admissibility, and such evidence may be considered and given probative effect." *Brown v. Chategnier*, 2016-0373, p. 4 (La. App. 4 Cir. 12/14/16), 208 So. 3d 410, 414; *Walley v. Vargas*, 2012–0022, p. 15 (La. App. 1 Cir. 9/21/12), 104 So. 3d 93, 104.

Mr. Jennings's statement to Mr. Richardson wherein he admitted to having an affair amounted to statement against his pecuniary interest and triggered the art. 804B(3) hearsay exception, because it subjected Mr. Jennings to civil liability in the divorce proceedings. Moreover, Mr. Richardson was subject to cross-examination by Mr. Jennings, further making the statement admissible. Finally, Mr. Jennings failed to object to Mr. Richardson's testimony at the trial and therefore waived his right to later object to its admissibility. Thus, based on the

aforementioned, we find that the trial court did not err in allowing and considering the testimony of Mr. Richardson.

Having determined the testimony of Mr. Richardson was admissible, we next consider the trial court's findings regarding adultery. At trial, both parties testified regarding the alleged adultery and were cross-examined. Ms. Woodside testified to viewing Mr. Jennings's phone records and speaking with an individual she believed had first-hand knowledge of the affair—the mistress. Ms. Woodside testified that the adultery she alleged in the petition stems from a new affair that she had learned of in 2019 and not the 2009 affair from which, she acknowledges, the couple reconciled. In addition to her own testimony, Ms. Woodside offered the witness, Mr. Richardson, who provided testimony that, in 2018, Mr. Jennings confessed to him that he was having an extra-marital affair. This statement, made in the present tense at the time it was uttered, was an admission, by Mr. Jennings, of a new affair distinct from the 2009 affair that was the subject of the couple's reconciliation.

As explained *supra*, circumstantial evidence regarding adultery must be so convincing as to exclude any other possible conclusion but that adultery occurred. In domestic cases, the trial judge is vested with great discretion in evaluating the credibility of witnesses. *Hebert v. Hebert*, 381 So. 2d 966, 968 (La. App. 4th Cir. 1980) (quoting *Pearce v. Pearce*, 348 So. 2d 75, 78 (La. 1977)). The conclusions of the trial court are accorded substantial weight and should not be disturbed unless there is a showing of manifest error. *Id.*

After granting the divorce in favor of Ms. Woodside, the trial court provided written reasons for judgment.[2] The trial court explained that after hearing and considering all the testimony, it determined Ms. Woodside was more credible than Mr. Jennings. Furthermore, the trial court reasoned Mr. Jennings alluded to an affair even without specifically admitting that he had committed adultery. Based on the admittedly circumstantial evidence presented at trial, the trial court found Ms. Woodside met her burden of proving the adultery allegation.

All evidence was weighed and considered by the trial court before it made the ruling that adultery was a cause of the divorce. Accordingly, we, therefore find no error in the trial court's determination that adultery occurred and was in fact a cause of the divorce.

III. *Whether the Trial Court Erred in Finding There Had Been Domestic Abuse in the Relationship*

Finally, Mr. Jennings asserts the trial court erred in finding domestic abuse on his part as a cause of the dissolution of the marriage. Mr. Jennings contends the trial court wrongfully allowed the admission of past protective orders and abuse prevention orders, because no testimony had been taken, there had been no formal findings of abuse, and Ms. Woodside withdrew her allegations.

Per art. 103(5), a divorce shall be granted upon proof that a protective order or an injunction was issued during the marriage against the other spouse to protect

---

[2] "Reasons for judgment serve to set forth the basis for the trial court's holding and are not binding; however, the appellate court may use the written reasons for judgment 'to gain insight into the district court's judgment.'" *Bernstein v. Bernstein*, 2019-1106, p. 13 (La. App. 4 Cir. 2/10/21), 313 So. 3d 413, 423, *writ denied*, 2021-00390 (La. 5/4/21), 315 So. 3d 220, and *writ denied*, 2021-00380 (La. 5/4/21), 315 So. 3d 222 (quoting *Wooley v. Lucksinger*, 2009-0571, p. 78 (La. 4/1/11), 61 So. 3d 507, 572).

the spouse seeking the divorce if the protective order was issued "after a contradictory hearing or consent decree." A protective order may be granted when either:

1. "The parties enter into a consent agreement," or

2. The accused party was given "[r]easonable notice and opportunity to be heard … sufficient to protect that person's right to due process."

La. Stat. Ann. § 46:2136.

In the current case, Mr. Jennings explains the protective orders considered by the trial court had not been issued following contradictory hearings or pursuant to any consent decrees. Specifically, Mr. Jennings points out that no testimony was taken and no affirmative findings were made by the trial court. This contention lacks merit. Testimony is not necessary for a contradictory hearing to have taken place. *See Barber v. Barber*, 2015-1021, p. 5 (La. App. 1 Cir. 4/15/16), 2016 WL 1535195, at *5 (Wherein the trial court found a contradictory hearing occurred even though no testimony was taken because the Louisiana statute does not mandate the manner in which evidence is taken or require the hearing be "susceptible of transcription").

On two occasions, Mr. Jennings was issued stay away orders following instances of alleged domestic abuse. Stay away orders instituted as a condition of release from prison or jail are considered protective orders for the purpose of protection from domestic violence. *State v. Kumar*, 46,056, p. 9 (La. App. 2 Cir. 3/2/11), 58 So. 3d 544, 551. Both times, Mr. Jennings signed the stay away orders

after stipulating he would stay away from Ms. Woodside. Mr. Jennings's signature indicates a hearing occurred for each of the two orders issued because his presence would be necessary to acquire the signature; additionally, his appearance to sign indicates he had proper notice. Mr. Jennings, during his testimony, read into the trial court record the wording of one of the signed stay away orders acknowledging a hearing had taken place. The trial court did not err in allowing evidence of past stay away orders because the orders, as signed by Mr. Jennings offered proof of protective orders that were issued following contradictory hearings as required by art. 103(5).

The trial court also considered orders of protection issued in the past and the credibility of both Mr. Jennings and Ms. Woodside through their respective testimony. Based on the testimonies, the trial court reasoned both parties may have mutually engaged in physical altercations, and it found the altercations rose to the level of abuse. The trial court ultimately ruled Ms. Woodside provided evidence sufficient to prove she suffered abuse at the hands of Mr. Jennings when she included art. 103(4) as one of the grounds for her divorce filing.

Generally, in an action for divorce "mutual, *equal* fault operates as a bar to relief being given to either litigant[; therefore], the courts consider in each case *the degree of guilt, and only where there is a finding of fact that the degree of guilt has been equal is the suit dismissed.*" *Eals v. Swan*, 221 La. 329, 333, 59 So. 2d 409, 410 (1952) (emphasis in original); *Laurent v. Laurent*, 347 So. 2d 312, 313 (La. App. 4th Cir. 1977). In the instant case, the trial court, recognized the possibility of

mutual fault and noted that Mr. Jennings likely also had reason to claim abuse; however, it did not address whether there was equal fault regarding abuse because Mr. Jennings forfeited the abuse claim when he failed to raise it in his reconventional demand. "Procedural due process requires that a person be given a *meaningful* opportunity to be heard." *Bays v. Bays*, 2000-1727, p. 6 (La. 2/21/01), 779 So. 2d 754, 758 (emphasis in original). The person against whom a claim is asserted must be given notice that sufficiently informs them of the pendency of the action and allows for the opportunity to present their objection. *Nelson v. Nelson*, 42,697, p. 4 (La. App. 2 Cir. 12/5/07), 973 So. 2d 148, 151.

In *Bays*, the plaintiff-husband sought an order of protection from his ex-wife. 2000-1727, p. 1, 779 So. 2d at 756. The defendant-wife did not file any pleadings, or motions seeking a protective order on her own behalf. *Id.* at p. 2, 779 So. 2d at 756. After hearing testimony from both parties and their children regarding past and current abuse allegations, the trial court concluded the parties had a mutually abusive relationship and issued protective orders against both parties. *Id.* The appellate court affirmed the trial court's judgment, reasoning the plaintiff had reasonable notice and an opportunity to be heard because: 1) the plaintiff was afforded notice via the testimony presented at the hearing, and 2) the plaintiff had an opportunity for cross-examination. *Id.* at p. 4, 779 So. 2d at 757. The Louisiana Supreme Court disagreed with the appellate court's conclusions and reasoned that had the plaintiff known he would face allegations of abuse and the possibility of a protective order against him, he would have prepared a different

cross-examination and defense; therefore, the plaintiff was not afforded a "meaningful opportunity to be heard." *Id*. at p. 7, 779 So. 2d at 758. The Louisiana Supreme Court reversed the lower court's granting of mutual protective orders to a husband and wife. *Id*. at p. 7, 779 So. 2d at 759.

The current case is analogous to *Bays*. Ms. Woodside was the only party asserting a fault divorce based on abuse and that a protective order had been issued. Mr. Jennings's reconventional demand only identified living separate and apart as his cause for divorce. Presumably, had Ms. Woodside known she would face accusations of abuse, she would have prepared her own defense and presumably approached cross-examination of Mr. Jennings in a different manner. Mr. Jennings's claim of mutual physical violence amounted to a defense to the allegation of abuse against him, rather than a fault claim against Ms. Woodside. The trial court was not obligated to consider whether Ms. Woodside was at fault for abuse when such allegation was not properly pled before the trial court, and Ms. Woodside was not afforded the opportunity to prepare a meaningful defense to such an allegation.

Thus the trial court did not err in finding that abuse had occurred and that a protective had been issued during the marriage; thus, assigning fault solely to Mr. Jennings.

## CONCLUSION

The trial court did not err in granting Ms. Woodside a fault-based divorce on the grounds of adultery, abuse and the issuance of a protective order during the marriage, as opposed to granting Mr. Jennings's non-fault based divorce.

Considering the foregoing, we affirm the trial court's granting of divorce in favor of Ms. Woodside pursuant to La. Civ. Code arts. 103(2), 103(4), and 103(5).

**AFFIRMED**